1 | HARRISON J. FRAHN IV (SBN 206822)
hfrahn@stblaw.com
2 | GAUTAM V. KENE (SBN 264166)
gkene@stblaw.com
3 | SIMPSON THACHER & BARTLETT LLP
2550 Hanover Street
4 | Palo Alto, California 94304
Tel. (650) 251-5000
5 | Fax (650) 251-5002

**ADR**

**FILED**

6 | BRIAN P. McCLOSKEY (*pro hac vice* pending)
bmccloskey@stblaw.com
7 | SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
8 | New York, New York 10017-3954
Tel. (212) 455-2000
9 | Fax (212) 455-2502

SEP 16 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

10 | *Attorneys for Plaintiff*
*SAP America, Inc.*

11

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

**JCS**

14 | SAN JOSE DIVISION

15 | **C V 11-04601**

16 | SAP AMERICA, INC.,

Case No. CV _____

17 | Plaintiff,
vs.

**COMPLAINT FOR DECLARATORY**
**RELIEF**

18

19 | PURPLE LEAF, LLC, a Delaware
corporation, PURPLE LEAF, LLC, a
Texas corporation, and RANI YADAV-
20 | RANJAN, an individual,

**DEMAND FOR JURY TRIAL**

21 | Defendants.

22

23 | Plaintiff SAP America, Inc. ("SAP") herby asserts the following claims against Defendant

24 | Purple Leaf, LLC, a Delaware limited liability company ("Purple Leaf Delaware"), Defendant

25 | Purple Leaf, LLC, a Texas limited liability company ("Purple Leaf Texas"), and Defendant Rani

26 | Yadav-Ranjan ("Yadav-Ranjan") (collectively, "Defendants") and alleges as follows:

27

28

COMPLAINT FOR DECLARATORY RELIEF

Case No. _____

1

**NATURE OF THE ACTION**

2    1.    This is a declaratory judgment action arising under the Declaratory Judgment Act,

3  28 U.S.C. § 2201, *et seq.* and the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.* SAP

4  seeks a declaration of non-infringement and invalidity, and a determination of Defendants'

5  alleged ownership rights and standing to sue regarding U.S. Patent No. 7,603,311 B1 ("the '311

6  Patent"), a true and correct copy of which is attached hereto as Exhibit A.

7

**THE PARTIES**

8    2.    Plaintiff SAP is a corporation duly organized and existing under the laws of the

9  State of Delaware with its principal place of business at 3999 West Chester Pike, Newtown

10  Square, PA 19073.  SAP has significant operations and personnel in this judicial district at its

11  Palo Alto campus, which is headquartered at 3410 Hillview Avenue, Palo Alto, California 94304.

12    3.    Defendant Purple Leaf Delaware is a limited liability company organized and

13  existing under the laws of Delaware.  Defendant Purple Leaf Delaware's business address is 2711

14  Centerville Road, Suite 400, Wilmington, Delaware 19808.  On information and belief,

15  Defendant Purple Leaf Delaware is solely managed, operated, and was founded by Rani Yadav-

16  Ranjan from San Jose, California.

17    4.    Defendant Purple Leaf Texas is a limited liability company organized and existing

18  under the laws of Texas.  Defendant Purple Leaf Texas claims its business address is located at

19  2500 Dallas Parkway, Suite 260, Plano, Texas 75093.  On August 15, 2011, the Ferguson Law

20  Group, which is located at 2500 Dallas Parkway, Suite 260, Plano Texas, reported to the

21  Secretary of State for the State of Texas that Purple Leaf Texas does not maintain an office at this

22  address and is not affiliated with the Ferguson Law Group.  On information and belief, Defendant

23  Purple Leaf Texas is solely managed, operated, and was founded by Rani Yadav-Ranjan from

24  San Jose, California.

25    5.    On information and belief, Defendant Yadav-Ranjan is, and at all times relevant

26  was, an individual who resides at 18730 Vista De Almaden, San Jose, California.  On information

27  and belief, Purple Leaf Delaware and Purple Leaf Texas are the alter egos of Defendant Yadav-

28  Ranjan.

COMPLAINT FOR DECLARATORY RELIEF      - 2 -      Case No. _____

**JURISDICTION (Civil L.R. 3-5(a)) AND VENUE**

6.      This action arises under the patent laws of the United States, Title 35 of the United States Code, with a specific remedy sought based upon the laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2202.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 because, on information and belief, Defendants Purple Leaf Delaware, Purple Leaf Texas, and Yadav-Ranjan reside in this district pursuant to § 1391(c), a substantial part of the events, acts, and/or omissions giving rise to the claims against Defendants occurred in this district, and the alleged infringing instrumentalities were developed and/or operated in this district.

8.      Defendant Purple Leaf Delaware is subject to personal jurisdiction in this judicial district because, on information and belief, it has engaged in substantial business within this forum amounting to sufficient minimum contacts, and has consented to personal jurisdiction in this district by *inter alia* purposefully reaching into California by appearing in and filing a cross-complaint in *Estakhri v. Yadav-Ranjan and Purple Leaf, LLC*, Case No. 1–10–CV–178576, in the Superior Court of California, County of Santa Clara ("Santa Clara County Action") in an effort to acquire the rights to the '311 Patent from Navigator Technology, Inc., a corporation with a principal place of business in this district.  Defendant Purple Leaf Delaware is also subject to personal jurisdiction in this district because, on information and belief, it is the alter ego of Defendant Yadav-Ranjan, an individual who resides in this district.

9.      This Court has personal jurisdiction over Defendant Purple Leaf Texas because, on information and belief, it has engaged in substantial business within this forum amounting to sufficient minimum contacts, including by *inter alia* purposefully reaching into California by auctioning covenants not to sue for the '311 Patent through its auctioneer and agent ICAP Patent Brokerage, LLC ("ICAP").  On August 10, 2011, ICAP issued a press release, which was picked up and retransmitted by numerous media outlets and websites, announcing an "auction" of a covenant not to sue under the '311 Patent.  The auction for the covenant not to sue seeks bids from companies or entities located throughout the United States, including companies located in

COMPLAINT FOR DECLARATORY RELIEF          - 3 -                          Case No. _____

1   California and in this district. On information and belief, Purple Leaf Texas directed the press
2   release at least in part to SAP and other defendants it has sued in the Eastern District of Texas,
3   including Google, Inc. ("Google") and eBay Inc. ("eBay"), both of whom also maintain a
4   principal place of business in this district. The auction includes two covenants not to sue on the
5   '311 Patent, one designated for parties who have been sued by Purple Leaf Texas, including SAP,
6   and one designated for companies who are not in litigation. The press release states that the
7   auction permits a "litigation defendant" to purchase a covenant not to sue anonymously through
8   ICAP's auction process and thereby "provides defendants a unique opportunity to quickly and
9   efficiently eliminate the uncertainty inherent in litigation without compromising their defense
10  strategy in the event of an unsuccessful bid." On information and belief, Purple Leaf Texas,
11  through its agent ICAP, will hold its auction on the covenant not to sue on September 27, 2011 in
12  Los Angeles, California. SAP and its counsel received the press release and the invitation to bid.
13  Thereafter, Purple Leaf Texas, through its auctioneer and agent ICAP, offered to visit Palo Alto
14  to discuss the covenant not to sue. On September 8, 2011, Purple Leaf Texas, through its
15  auctioneer and agent ICAP, met with counsel for SAP in Palo Alto, California to discuss the
16  planned auction for the covenant not to sue. Purple Leaf Texas, through its auctioneer and agent
17  ICAP, provided SAP with a draft covenant not to sue for infringement of the '311 Patent. In
18  addition, on information and belief, Purple Leaf Texas, through its auctioneer and agent ICAP,
19  offered to visit and, on August 30, 2011, did visit the San Francisco offices of Google's counsel
20  to discuss the planned auction for the covenant not to sue. Thereafter, on information and belief,
21  Purple Leaf Texas, through its auctioneer and agent ICAP, provided counsel for Google with a
22  draft covenant not to sue for infringement of the '311 Patent. Purple Leaf Texas is also subject to
23  personal jurisdiction in this district because, on information and belief, it is the alter ego of
24  Defendant Yadav-Ranjan, an individual who resides in this district.

25      10.     This Court has personal jurisdiction over Defendant Yadav-Ranjan because, on
26  information and belief, Defendant Yadav-Ranjan resides in this district and has engaged in
27  continuous and systemic activities within this district, including by *inter alia* residing in this
28

COMPLAINT FOR DECLARATORY RELIEF        - 4 -                    Case No. _____

1   District and serving as an officer of multiple corporations with a principal place of business in

2   this district.

3   **INTRADISTRICT ASSIGNMENT (Civil L.R. 3-5(b))**

4   11.     Because this action is an Intellectual Property Action as specified in Civil L.R. 3-

5   2(c), it is to be assigned on a district-wide basis.

6   **FACTS**

7   **Defendant Yadav-Ranjan's Assignment of the '311 Patent to Navigator**

8   *The 2007 Intellectual Property Assignment Agreement*

9   12.     The patent application that issued as the '311 Patent was filed with the United

10  States Patent and Trademark Office ("USPTO") on November 25, 2000 as Application No.

11  09/721,728, naming Defendant Yadav-Ranjan as the sole inventor.

12  13.     On or about September 15, 2002, Defendant Yadav-Ranjan founded Navigator

13  Technology, Inc, (f/k/a Construction Navigator Inc.), a corporation that purports to provide

14  information about professional licensing for contractors in the United States. Navigator

15  Technology, Inc. was originally formed under the laws of the State of Delaware as Construction

16  Navigator, Inc. On or about May 6, 2009, Defendant Yadav-Ranjan signed and delivered or

17  caused to be delivered to the Delaware Secretary of State a Certificate of Amendment to the

18  Amended and Restated Certificate of Incorporation of Construction Navigator Inc. (the

19  "Certificate of Amendment"), which changed the name of Construction Navigator, Inc to

20  Navigator Technology, Inc.[1]

21  14.     Beginning in approximately June of 2007, Defendant Yadav-Ranjan approached

22  potential investors about investing in Navigator.

23

24

25

26

27

28  [1] Unless otherwise specified, Navigator Technology, Inc. and Construction Navigator, Inc. are herein referred to as "Navigator."

COMPLAINT FOR DECLARATORY RELIEF          - 5 -                    Case No. _____

1  15. On or about September 18, 2007, to induce investments in Navigator, Defendant

2 Yadav-Ranjan entered into an Intellectual Property Assignment Agreement (the "2007

3 Assignment Agreement") with Navigator through which Defendant Yadav-Ranjan agreed to

4 assign all right, title, and interest to her intellectual property to Navigator. A copy of the 2007

5 Assignment Agreement is attached hereto as Exhibit B.

6  16. Specifically, Defendant Yadav-Ranjan and Navigator represented in the 2007

7 Assignment Agreement that "in order to induce such investors to invest in the [stock financing]

8 and in order to increase the value of [Defendant Yadav-Ranjan]'s equity holdings in [Navigator],

9 [Defendant Yadav-Ranjan] desires to transfer and assign all right title and interest in and to the

10 Technology, Intellectual Property and Registered Intellectual Property (each as defined below) to

11 Navigator."

12  17. The 2007 Assignment Agreement provides that it is a "condition to the closing of

13 [stock financing] that [Defendant Yadav-Ranjan] transfers and assigns all right and title and

14 interest in and to the Technology, Intellectual Property and Registered Intellectual property to

15 [Navigator]."

16  18. The 2007 Assignment Agreement provides that "[Defendant Yadav-Ranjan]

17 hereby transfers and assigns to [Navigator] all right, title and interest in and to the Technology,

18 Intellectual Property and Registered Intellectual Property."

19  19. The 2007 Assignment Agreement further provides that "Schedule B lists all

20 Registered Intellectual Property owned by, or filed in the name of, [Defendant Yadav-Ranjan].

21 Schedule B lists all Registered Intellectual Property that is transferred to [Navigator] by Founder

22 [Defendant Yadav-Ranjan], pursuant to this Agreement."

23  20. The intellectual property set forth in Schedule B that was transferred by Defendant

24 Yadav-Ranjan to Navigator pursuant to the 2007 Assignment Agreement includes Patent

25 Application 09/721,728, filed November 25, 2000, entitled "Process and Device for Conduction

26 Electronic Transactions," which ultimately issued as the '311 Patent.

27     ***The At Will Employment and Invention Assignment Agreement***

28  21. On or around September 24, 2007, Defendant Yadav-Ranjan and Navigator

1  entered into an At Will Employment, Confidential Information, Invention Assignment, And
2  Arbitration Agreement ("2007 Employment Agreement").

3      22.    Defendant Yadav-Ranjan represented in the Employment Agreement that she
4  "attached hereto as Exhibit A, a list describing all inventions . . . which were made by me prior to
5  my employment with the Company, which belong to me, which relate to the Company's proposed
6  business, products or research and development, and which are not assigned to the Company
7  hereunder; or, if no such list is attached, I represent that there are no such Prior Inventions."
8  Defendant Yadav-Ranjan did not list *any* intellectual property in Exhibit A, thereby representing
9  that there were no such Prior Inventions.

10                  **The Series A Preferred Stock Financing Agreement**

11     23.    On or about September 28, 2007, Navigator entered into a Series A Preferred
12  Stock Financing Agreement for the sale of 3,750,000 shares of Series A Preferred Stock (the
13  "Financing Agreement"). The Financing Agreement was signed by Defendant Yadav-Ranjan on
14  behalf of Navigator.

15     24.    The Financing Agreement provides that, as a condition to closing the Series A
16  Financing Agreement, Navigator and Defendant Yadav-Ranjan shall have executed the 2007
17  Assignment Agreement.

18     25.    The Financing Agreement also provides "No employee, officer or consultant of
19  [Navigator] has (i) excluded works or inventions made prior to his or her employment with
20  [Navigator] from his or her assignment of inventions pursuant to such employee, officer or
21  consultant's proprietary information and inventions agreement or (ii) failed to affirmatively
22  indicate in such proprietary information and inventions agreement that no such works or
23  inventions made prior to his or her employment with [Navigator] exist."

24        **Yadav-Ranjan's Wrongful Assignment of the '311 Patent to Purple Leaf Delaware**

25     26.    On information and belief, Defendant Yadav-Ranjan was the President and Chief
26  Executive Officer of Navigator from its formation on September 15, 2002 until her resignation on
27  October 30, 2009.

28     27.    Publically available documents from the Santa Clara Action, *Estakhri v. Yadav-*

COMPLAINT FOR DECLARATORY RELIEF     - 7 -              Case No. _____

1    *Ranjan and Purple Leaf, LLC*, Case No. 1–10–CV–178576, in the Superior Court of California,

2    County of Santa Clara, Dkt. No. 1, allege that, in April 2010, Navigator's Board of Directors

3    learned that Defendant Yadav-Ranjan, while serving as Chairperson of the Board of Directors of

4    Navigator, instructed contractors and former employees to reformat their hard drives and

5    otherwise alter or destroy Navigator's assets.

6        28.    Subsequently, on information and belief, Navigator's Board of Directors noticed a

7    meeting of the Board for April 8, 2010.

8        29.    At the April 8, 2010 Board meeting, on information and belief, the Board removed

9    Yadav-Ranjan as Chairperson of the Board and as an officer of Navigator.

10        30.    On information and belief, just prior to when Navigator's Board removed

11   Defendant Yadav-Ranjan as an officer of Navigator and in the months following her removal,

12   Defendant Yadav-Ranjan engaged a series of actions in an attempt to effectuate the wrongful

13   transfer of the '311 Patent to Purple Leaf Delaware, without permission from Navigator.

14        31.    Starting on April 6, 2010, just two days prior to her removal as Chairperson,

15   Defendant Yadav-Ranjan formed or caused to be formed Purple Leaf Delaware.

16        32.    On April 15, 2010, one week after she was removed as Chairperson of Navigator,

17   Defendant Yadav-Ranjan executed an assignment purporting to assign the '311 Patent from

18   herself to Purple Leaf Delaware ("2010 Assignment Agreement"), despite the fact that she had

19   previously assigned the '311 Patent to Navigator in 2007. Accordingly, the 2010 Assignment

20   Agreement was ineffective and did not result in the '311 Patent being assigned to Purple Leaf

21   Delaware.

22        33.    In the 2010 Assignment Agreement, Defendant Yadav-Ranjan wrongfully

23   represented that she is the "owner of the entire right, title and interest" in the '311 Patent.

24        34.    Defendant Yadav-Ranjan further wrongfully represented in the 2010 Assignment

25   Agreement that she had not "knowingly conveyed to others any rights in said inventions,

26   discoveries, applications or patents or any license to use the same or to make, use or sell anything

27   embodying or utilizing any of said inventions or discoveries and that I have good right to assign

28   the same to Assignee without encumbrance."

1    35.    Moreover, notwithstanding all of the other defects surrounding the 2010

2    Assignment Agreement, Defendant Yadav-Ranjan did not expressly transfer to Purple Leaf

3    Delaware the right to sue for past infringement of the '311 Patent.

4    **Purple Leaf Delaware's Wrongful Assignment of the '311 Patent to Purple Leaf Texas**

5    36.    On information and belief, on May 26, 2011, Defendant Yadav-Ranjan, on behalf

6    of Purple Leaf Delaware, executed an assignment purporting to assign the '311 Patent to Purple

7    Leaf Texas ("2011 Assignment Agreement").

8    37.    On information and belief, in the 2011 Assignment Agreement, Defendants

9    Yadav-Ranjan and Purple Leaf Delaware represented that Purple Leaf Delaware was at the time

10   the owner of the entire right, title and interest in the '311 Patent. Defendants made this

11   representation despite the fact that Defendant Yadav-Ranjan did not expressly transfer to Purple

12   Leaf Delaware the right to sue for past infringement in the 2010 Assignment Agreement and

13   despite the fact that Defendant Yadav-Ranjan previously assigned the '311 Patent to Navigator in

14   2007. On information and belief, as of May 26, 2011, when Defendants Yadav-Ranjan and

15   Purple Leaf Delaware executed the 2011 Assignment Agreement, Navigator owned the entire

16   right, title and interest in the '311 Patent and had not assigned any right in the '311 Patent to

17   Defendants Yadav-Ranjan or Purple Leaf Delaware. Accordingly, the 2011 Assignment

18   Agreement was ineffective and did not result in the '311 Patent being assigned to Purple Leaf

19   Texas.

20   **Defendant Yadav-Ranjan's Intentional and Material Misrepresentations to the USPTO**

21   38.    Beginning in July 2010, Defendant Yadav-Ranjan took several steps to try to

22   record her wrongful assignments with the USPTO and to prevent Navigator from taking any

23   further action with respect to the '311 Patent.

24   39.    On July 12, 2010, Defendants Yadav-Ranjan and Purple Leaf Delaware filed or

25   caused to be filed with the USPTO the wrongful and ineffective 2010 Assignment Agreement,

26   which purported to assign the '311 Patent from Defendant Yadav-Ranjan to Purple Leaf

27   Delaware, which was recorded at reel 024662, frame 0677.

28   40.    On July 29, 2010, Navigator filed the 2007 Assignment Agreement with the

1   USPTO, by which Defendant Yadav-Ranjan assigned the '311 Patent to Navigator. The 2007

2   Assignment Agreement was recorded at reel 024741, frame 0843.

3       41.     On information and belief, on August 3, 2010, without authorization from

4   Navigator, Defendants Yadav-Ranjan and Purple Leaf Delaware filed or caused to be filed a

5   request with the USPTO to revoke the power of attorney of Navigator's counsel and grant power

6   of attorney to Defendant Yadav-Ranjan ("Power of Attorney Request").

7       42.     The Power of Attorney Request, which is signed by Defendant Yadav-Ranjan,

8   contains false statements, including that Defendant Yadav-Ranjan owned the '311 Patent, despite

9   the facts that she had already assigned the patent to Navigator in 2007 and had purported to again

10  assign the patent to Purple Leaf Delaware in 2010.

11      43.     On information and belief, on August 9, 2010, without authorization from

12  Navigator, Defendants Yadav-Ranjan and Purple Leaf Delaware filed or caused to be filed a

13  request with the USPTO to change the correspondence address associated with the prosecution of

14  the '311 Patent from Navigator's patent counsel to Defendant Yadav-Ranjan's residence in San

15  Jose, California ("Change of Correspondence Request").

16      44.     The Change of Correspondence Request form states that "signatures of all the

17  inventors or assignees of record of the entire interest or their representative(s) are required" to

18  change the correspondence address.

19      45.     Despite the fact that she had already assigned the patent to Navigator in 2007 and

20  had purported to assign the patent to Purple Leaf Delaware in April 2010, Defendant Yadav-

21  Ranjan signed the August 9, 2010 request alone, representing to the USPTO that she owned the

22  entire interest of the '311 Patent.

23      46.     On September 24, 2010, Defendants Yadav-Ranjan and Purple Leaf Delaware

24  filed or caused to be filed with the USPTO a Petition to Expunge the recording of the 2007

25  Assignment Agreement of the '311 Patent to Navigator ("Petition to Expunge"), which was

26  recorded at reel 025137, frame 0450.

27      47.     In the Petition to Expunge, Defendant Yadav-Ranjan declared that "all statements

28  made herein of my own knowledge are true and that all statements made on information and

COMPLAINT FOR DECLARATORY RELIEF        - 10 -                    Case No. _____

1  belief are believed to be true; and further that these statements were made with the knowledge
2  that willful false statements and the like so made are punishable by fine or imprisonment, or both,
3  under Section 1001 of Title 18 of the United States Code and that such willful false statements
4  may jeopardize the validity of the application or any patent issuing thereon."

5      48.     Despite attesting to the veracity of her statements in the Petition to Expunge,
6  Defendant Yadav-Ranjan made several false statements to the USPTO with the intent to deceive
7  the USPTO, including *inter alia*:

8          a.      On information and belief, Defendant Yadav-Ranjan falsely declared with
9  the intent to deceive the USPTO that the '311 Patent "remained unassigned until April 15, 2010."

10         b.      On information and belief, Defendant Yadav-Ranjan falsely declared with
11 the intent to deceive the USPTO that attorney "Timothy W. Lohse wrongfully, and without
12 privilege, caused to be recorded an incomplete and misleading copy of the 2007 Assignment
13 Agreement to the USPTO."

14         c.      On information and belief, although Defendant Yadav-Ranjan was aware
15 that Mr. Lohse was retained by Navigator to provide advice on intellectual property issues,
16 including prosecution of the patent application which issued as the '311 Patent, she falsely
17 declared with the intent to deceive the USPTO that she had retained Mr. Lohse in her individual
18 capacity.

19         d.      On information and belief, Defendant Yadav-Ranjan falsely declared with
20 the intent to deceive the USPTO that the 2007 Assignment Agreement contained errors and
21 should not have listed the '311 Patent as assigned to Navigator.

22         e.      On information and belief, Defendant Yadav-Ranjan falsely declared with
23 the intent to deceive the USPTO that "[t]he copy of the [2007] Assignment Agreement also shows
24 the name of the company to be 'Construction Navigator, Inc' [ ] not the purported assignee name
25 of 'Navigator Technology, Inc' [ ] further highlighting the obvious errors." Defendant Yadav-
26 Ranjan purposely concealed from the USPTO the fact that prior to 2009, Navigator Technology
27 was called Construction Navigator, Inc. In addition, on information and belief, Defendant Yadav-
28 Ranjan was aware that her statement to the USPTO was false, having signed a Certificate of

COMPLAINT FOR DECLARATORY RELIEF        - 11 -                    Case No. _____

1    Amendment that changed the name of the company from Construction Navigator, Inc to

2    Navigator Technology on or around May 6, 2009.

3        49.    In response to the Petition to Expunge, the USPTO removed its record of the 2007

4    Assignment Agreement from its assignment database accessible on the USPTO website.

5        50.    On December 21, 2010, Defendants Yadav-Ranjan and Purple Leaf Delaware filed

6    or caused to be filed with the USPTO a request to grant power of attorney to Purple Leaf

7    Delaware's counsel. The request, signed by Defendant Yadav-Ranjan, falsely states with the

8    intent to deceive the USPTO that Purple Leaf Delaware is the assignee of the '311 Patent.

9        51.    On December 29, 2010, the USPTO denied Defendants Yadav-Ranjan and Purple

10   Leaf Delaware's request for a power of attorney for failing to file a statement under 37 CFR

11   3.73(b) providing that Purple Leaf Delaware is the assignee of the entire, right, title, and interest

12   in the '311 Patent.

13       52.    Subsequently, on January 5, 2011, Defendants Yadav-Ranjan and Purple Leaf

14   Delaware filed or caused to be filed a second request to grant power of attorney to Purple Leaf

15   Delaware's counsel along with a false statement with the intent to deceive the USPTO that Purple

16   Leaf Delaware was the assignee of the entire, right, title, and interest in the '311 Patent.

17       53.    On September 8, 2011, Defendants Yadav-Ranjan and Purple Leaf Delaware filed

18   or caused to be filed with the USPTO the wrongful and ineffective 2011 Assignment Agreement

19   purporting to assign the '311 Patent to Purple Leaf Texas, which was recorded at reel 026871,

20   frame 0191.

21                                  **The Santa Clara Action**

22       54.    On or around July 30, 2010, Petro Estakhri, Navigator's Chairman of the Board,

23   directly and derivatively on behalf of Navigator, brought an action against Defendants Yadav-

24   Ranjan and Purple Leaf Delaware in the Superior Court of California, County of Santa Clara.

25   The complaint asserts several causes of action, including but not limited to, conversion of the

26   '311 Patent.

27       55.    On or around September 3, 2010, Defendant Yadav-Ranjan filed a cross-complaint

28   against Petro Estakhri and Navigator. The cross-complaint asserts several causes of action,

COMPLAINT FOR DECLARATORY RELIEF        - 12 -                        Case No. _____

1    including but not limited to, conversion of the '311 Patent and causes of action requesting

2    reformation, rescission, and cancellation of the 2007 Assignment Agreement.

3    56.    On or around January 26, 2011, Petro Estakhri and Navigator filed an *ex parte*

4    application for a Temporary Restraining Order to restrain Defendants Yadav-Ranjan and Purple

5    Leaf Delaware from, among other limitations, (1) transferring the '311 Patent pending trial in the

6    Santa Clara Action; and (2) taking any action before the USPTO without providing advanced

7    notice to counsel for Navigator. The Temporary Restraining Order and a related Order to Show

8    Cause as to why the temporary restraining order should not issue was granted on January 26,

9    2011.

10    57.    On February 1, 2011, Purple Leaf Delaware filed a Response to the Santa Clara

11    County Court's Order to Show Cause, in which Defendant Yadav-Ranjan joined. In support of

12    Purple Leaf Delaware's Response, Defendant Yadav-Ranjan signed a declaration under penalty

13    of perjury, which further elaborated on the allegations in her cross-complaint ("the Declaration").

14    58.    In the Declaration, Defendant Ranjan-Yadav asserts that prior to signing the

15    agreement she contacted an attorney at Greenberg Traurig LLP and "told him that Schedule B

16    was inaccurate and the '311 patent Application was not to be included because it did not relate to

17    the business of Navigator. After this conversation, [the attorney] provided me with a revised

18    version of the Assignment Agreement that contained instructions to delete all references to the

19    '311 Patent Application and related applications."

20    59.    Defendant Ranjan-Yadav attached to the Declaration what she claimed to be a true

21    and correct copy a July 28, 2007 e-mail from the Greenberg Traurig attorney attaching the

22    allegedly revised version of the 2007 Assignment Agreement. Next to the listing of the patent

23    application that issued as the '311 Patent in the copy of the version of Schedule B attached to the

24    Declaration there is a notation stating, "please remove."

25    60.    In the Declaration, Defendant Ranjan-Yadav also asserted that prior to signing the

26    2007 Employment Agreement she was provided with a draft by an attorney at DLA Piper.

27    Defendant Ranjan-Yadav declares that the "draft listed no prior inventions on Exhibit A. I

28    contacted [the attorney] and alerted him of the fact that the '311 Patent Application was not on

1    the Employment Agreement. [The attorney] stated he would type in the '311 Patent Application

2    to this document. Accordingly, when I executed this page along with several other unattached

3    signature pages, I did not mark the box for 'No inventions or improvements.'"

4        61.     On February 4, 2011, Navigator and Estakhri filed a Reply to the Court's Order to

5    Show Cause. In the Reply, Navigator and Estakhri assert that the evidence does not support

6    Defendant Yadav-Ranjan's contention of a mistake with respect to the 2007 Assignment

7    Agreement, and "indeed, the evidence suggests that Yadav-Ranjan may have tampered with an

8    exhibit to her declaration."

9        62.     Navigator and Estakhri state in the Reply that they obtained a copy of the July 28,

10   2007 e-mail from the attorney at Greenberg Traurig, and contrary to the statements in Defendant

11   Yadav-Ranjan's sworn declaration, the draft of the 2007 Assignment Agreement attached to the

12   July 28, 2007 e-mail contains no color text or highlighting, nor does it contain the notation

13   "please remove" next to the patent application which issued as the '311 Patent.

14       63.     In the Reply, Navigator and Estakhri also identified several additional pieces of

15   evidence, which they alleged were additional proof that Defendant Yadav-Ranjan intended to

16   transfer the '311 Patent to Navigator in September 2007. That evidence includes the following:

17              a.      In a July 31, 2007 e-mail, Defendant Yadav-Ranjan wrote to the attorney

18   handling general corporate matters for Navigator and stated "[j]ust assign all the IP to CNi

19   [Construction Navigator, Inc.]"

20              b.      On September 5, 2007, "angry" that Estakhri required Defendant Yadav-

21   Ranjan forgive her $60,000 loan to Navigator as a condition to Estakhri investing in the Series A

22   Financing, Defendant Yadav-Ranjan wrote to the attorney handling general corporate matters for

23   Navigator and stated "More important than that is the fact that I am attaching the e-commerce

24   patent, which is loosely valued at over $100M!"

25              c.      From July 28, 2007, the time period that Defendant Yadav-Ranjan stated

26   she instructed Navigator's counsel to remove references to the '311 Patent from the draft 2007

27   Assignment Agreement, to September 18, 2007, when she executed the 2007 Assignment

28   Agreement, Defendant Yadav-Ranjan was copied on two e-mails, dated August 21, 2007 and

1 September 8, 2007, which included drafts of the 2007 Assignment Agreement listing the '311
2 Patent on Schedule B.

3        d.       After an unfavorable CEO review on September 24, 2009, Defendant
4 Yadav-Ranjan considered resigning her position as CEO. On condition of her returning to the
5 position of CEO, Defendant Yadav-Ranjan demanded compensation that included, among other
6 things: "The Company must assign that certain patent of the Company regarding 'Process and
7 Device for Conducting Electronic Transactions (991100)', 09[/]721,728, to Ms. Yadav-Ranjan."

8        e.       In an October 2009 e-mail to Estakhri and others, Defendant Yadav-Ranjan
9 stated, "having received a bias [sic], employment review filled with untruths I resigned my
10 position of CEO. Petro asked for terms under which I would consider continuing to run the
11 company while also raising venture money, sales and cto responsibilities. Understanding the
12 financial position of the company, the only reasonable compensation was equity and reassignment
13 of my first patent which has nothing to do with the technology of the company."

14       64.      The Santa Clara County Court entered a Preliminary Injunction against Defendants
15 Yadav-Ranjan and Purple Leaf Delaware on February 7, 2011 enjoining them from, among other
16 limitations, (1) transferring the '311 Patent pending trial in the Santa Clara Action; and (2) taking
17 any action before the USPTO without providing advanced notice to counsel for Navigator.

18       65.      On March 7, 2011, the Santa Clara Action was mediated at JAMS. A settlement
19 agreement was reached in principle at the mediation and the parties thereafter drafted definitive
20 settlement documents ("Settlement Agreement and Mutual Release.")

21       66.      Pursuant to the Settlement Agreement and Mutual Release, Defendant Yadav-
22 Ranjan agreed to "pay to Navigator or its assigns the total sum of nine hundred thousand dollars
23 ($900,000)" and Navigator and Estakhri agreed to execute a quitclaim assignment, in the form of
24 Exhibit E to the Settlement Agreement and Mutual Release, transferring to Purple Leaf Delaware
25 "whatever rights may have allegedly ever been possessed by either of the Assignors" in and to the
26 '311 Patent ("Quitclaim Assignment"). The Quitclaim assignment also assigned "all claims for
27 damages by reason of past infringement" of the '311 Patent.

28       67.      The parties agreed, pursuant to the Settlement Agreement and Mutual Release, that

COMPLAINT FOR DECLARATORY RELIEF     - 15 -            Case No. _____

1    the Settlement Agreement and Mutual Release and the Quitclaim assignment would not become

2    effective until *inter alia* the Santa Clara County Court entered an order granting final approval of

3    the Settlement, the Preliminary Injunction was dissolved, the Santa Clara County lawsuit was

4    dismissed with prejudice, and a related action filed in Illinois, *Petro Estakhri v. Yadav-Ranjan, et*

5    *al*, Case No. 2011 L 002374 (Cook County) was dismissed with prejudice.

6        68.    The Settlement Agreement and Mutual Release was approved by the Santa Clara

7    County Court and the Santa Clara Action was dismissed on or around June 3, 2011.

8        69.    The related action filed in Illinois, *Petro Estakhri v. Yadav-Ranjan, et al*, Case No.

9    2011 L 002374 (Cook County), was dismissed on June 16, 2011.

10       70.    Therefore the effective date of the Settlement Agreement and Mutual Release and

11    the Quitclaim Assignment was no earlier than June 16, 2011.

12                        **The Eastern District of Texas Action**

13       71.    On May 31, 2011, Purple Leaf Texas filed a complaint in the Eastern District of

14    Texas, case no. 6:11-cv-00279-LED, alleging that American Express Company, Citigroup, Inc.,

15    Fiserv, Inc., JP Morgan Chase & Co., PNC Bank, N.A., and SAP had infringed and continue to

16    infringe the '311 Patent (the "Texas Action"). As of September 16, 2011, SAP has not been

17    served in the Texas Action.

18       72.    On May 31, 2011, when Purple Leaf Texas commenced the Texas Action,

19    Navigator still owned the entire right, title and interest in the '311 Patent because the Settlement

20    Agreement and Mutual Release and the Quitclaim Assignment assigning the patent from

21    Navigator to Purple Leaf Delaware was not effective until at least June 16, 2011. Thus, on May

22    26, 2011 when Purple Leaf Delaware purported to assign the '311 Patent to Purple Leaf Texas, it

23    did not have any patent rights to assign.

24       73.    Accordingly, when Purple Leaf Texas commenced the Texas Action on May 31,

25    2011, it lacked standing to sue for infringement of the '311 patent.

26

27

28

COMPLAINT FOR DECLARATORY RELIEF     - 16 -               Case No. _____

1
2

**FIRST CLAIM FOR RELIEF**
**Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,603,311 B1**
**(against all Defendants)**

3     74.     The allegations of paragraphs 1–73 of this Complaint are incorporated by
4     reference as though set forth in full herein.

5     75.     Defendant Purple Leaf Texas has filed suit against SAP in the Eastern District of
6     Texas for allegedly infringing the '311 Patent.

7     76.     The allegations of infringement against SAP have created a substantial, immediate,
8     and real controversy between the parties as to the non-infringement of the '311 Patent. A valid
9     and justiciable controversy has arisen and exists between SAP and Defendants within the
10    meaning of 28 U.S.C. § 2201.

11    77.     SAP has not infringed and does not directly or indirectly infringe any valid and
12    enforceable claim of the '311 Patent, either literally or under the doctrine of equivalents because
13    none of its products and services practice any valid and enforceable claim of the '311 Patent. A
14    judicial declaration of non-infringement is necessary and appropriate so that SAP may ascertain
15    its rights regarding the '311 Patent.

16
17

**SECOND CLAIM FOR RELIEF**
**Declaratory Judgment of Invalidity of U.S. Patent No. 7,603,311 B1**
**(against all Defendants)**

18    78.     The allegations of paragraphs 1–77 of this Complaint are incorporated by
19    reference as though set forth in full herein.

20    79.     The charge of alleged infringement against SAP has created a substantial,
21    immediate, and real controversy between the parties as to the validity of the '311 Patent. A valid
22    and justiciable controversy has arisen and exists between SAP and Defendants within the
23    meaning of 28 U.S.C. § 2201.

24    80.     One or more claims of the '311 Patent are invalid because they fail to meet the
25    conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.*,
26    including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

27    81.     A judicial declaration of invalidity is necessary and appropriate so that SAP may
28    ascertain its rights regarding the '311 Patent.

COMPLAINT FOR DECLARATORY RELIEF          - 17 -          Case No. _____

**THIRD CLAIM FOR RELIEF**
**Declaration Regarding Defendants' Ownership Rights and Standing to Sue**
**(against all Defendants)**

82. The allegations of paragraphs 1–81 of this Complaint are incorporated by reference as though set forth in full herein.

83. The charge of alleged infringement against SAP has created a substantial, immediate, and real controversy between the parties regarding the legal title of the '311 Patent. A valid and justiciable controversy has arisen and exists between SAP and Defendants within the meaning of 28 U.S.C. § 2201.

84. In Texas Action, Purple Leaf Texas has represented that it is the owner of all rights, title, and interest to the '311 Patent.

85. Having assigned all right, title, and interest to her intellectual property, including the '311 Patent, to Navigator in 2007, Defendant Yadav-Ranjan had no rights in the '311 Patent when she executed the April 2010 Assignment Agreement purporting to assign all present and future rights, title, and interest to Purple Leaf Delaware. The ineffective 2010 Assignment Agreement did not purport to assign the right to past damages to Purple Leaf Delaware.

86. As alleged in at least paragraphs 65–70 above, the Mutual Settlement and Release and the Quitclaim Assignment executed between Navigator and Purple Leaf Delaware and assigning all rights, title, and interest to Purple Leaf Delaware became effective no earlier than June 16, 2011. On information and belief, despite having no rights to the '311 Patent before June 2011, Purple Leaf Delaware on May 26, 2011 executed the 2011 Assignment Agreement, purporting to assign all rights, title, and interest to Purple Leaf Texas. On information and belief, Purple Leaf Delaware has not assigned any valid right to the '311 Patent to Purple Leaf Texas.

87. Despite having no rights to the '311 Patent and no standing to enforce any such rights, Defendant Purple Leaf Texas asserted the '311 Patent against SAP by filing the Texas Action on May 31, 2011.

88. SAP therefore requests a judicial determination that Defendant Purple Leaf Texas lacked ownership in the '311 Patent at the time it filed the Texas Action against SAP on May 31, 2011 and had no right or standing to enforce the '311 Patent at that time.

COMPLAINT FOR DECLARATORY RELIEF       - 18 -                    Case No. _____

1    89.    SAP further seeks a judicial determination as to whether and when any of the

2    Defendants held title to the '311 Patent in order to determine whether and when any of the

3    Defendants had standing to bring suit and for what period any of the Defendants can claim

4    damages should this Court determine damages are appropriate for any alleged infringement.

5    Such a determination is necessary and appropriate so that SAP may ascertain its rights regarding

6    the '311 Patent.

7                              **PRAYER FOR RELIEF**

8         WHEREFORE, Plaintiff SAP prays for a declaration from this Court and judgment as

9    follows:

10   1.    That SAP does not infringe any of the claims of the '311 Patent;

11   2.    That each and every claim of the '311 Patent is invalid;

12   3.    That the '311 Patent is unenforceable;

13   4.    That Defendant Purple Leaf Texas did not have any rights to the '311 Patent or

14   standing to sue for infringement of the '311 when it filed suit against SAP in the Eastern District

15   of Texas on May 31, 2011;

16   5.    Declaring who owns and is entitled to sue for damages for alleged past

17   infringement of the '311 Patent;

18   6.    That this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling

19   SAP to an award of reasonable attorneys' fees, expenses, and costs in this action; and

20   7.    For such other and further relief as this Court deems just, reasonable, and proper.

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF        - 19 -                    Case No. _____

1

**JURY DEMAND**

2

Plaintiff SAP America, Inc. demands a trial by jury on all issues presented herein.

3    DATED: September 16, 2011          SIMPSON THACHER & BARTLETT LLP

4

5                                       By: _____ GVK

6                                       HARRISON J. FRAHN IV (SBN 206822)
                                        hfrahn@stblaw.com
7                                       GAUTAM V. KENE (SBN 264166)
                                        gkene@stblaw.com
8                                       SIMPSON THACHER & BARTLETT LLP
                                        2550 Hanover Street
9                                       Palo Alto, California 94304
                                        Tel. (650) 251-5000
10                                      Fax (650) 251-5002

11                                      BRIAN P. McCLOSKEY (*pro hac vice*
12                                      pending)
                                        bmccloskey@stblaw.com
13                                      SIMPSON THACHER & BARTLETT LLP
                                        425 Lexington Avenue
14                                      New York, New York 10017-3954
                                        Tel. (212) 455-2000
15                                      Fax (212) 455-2502

16

17                                      *Attorneys for Plaintiff*
                                        *SAP America, Inc.*
18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF          - 20 -          Case No. _____

Exhibit A



US007603311B1

(12) **United States Patent**
Yadav-Ranjan

(10) **Patent No.:** **US 7,603,311 B1**
(45) **Date of Patent:** **Oct. 13, 2009**

(54) **PROCESS AND DEVICE FOR CONDUCTING ELECTRONIC TRANSACTIONS**

(76) Inventor: **Rani K. Yadav-Ranjan**, 6620 Creekview Ct., San Jose, CA (US) 95120

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1173 days.

(21) Appl. No.: **09/721,728**

(22) Filed: **Nov. 25, 2000**

**Related U.S. Application Data**

(60) Provisional application No. 60/170,829, filed on Dec. 14, 1999, provisional application No. 60/167,938, filed on Nov. 29, 1999, provisional application No. 60/174,123, filed on Dec. 31, 1999, provisional application No. 60/174,124, filed on Dec. 31, 1999, provisional application No. 60/199,910, filed on Apr. 26, 2000.

(51) **Int. Cl.**
*G06Q 40/00* (2006.01)

(52) **U.S. Cl.** ................................ 705/39; 705/35; 705/40

(58) **Field of Classification Search** .................. 705/27, 705/40, 35, 39
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,842,248 A | 10/1974 | Yarnell et al. | 235/156 |
| 3,852,571 A | 12/1974 | Hall et al. | 235/61 |
| 4,485,300 A | 11/1984 | Pierce | 235/380 |
| 4,701,601 A | 10/1987 | Francini et al. | 235/449 |
| 4,734,564 A | 3/1988 | Boston et al. | 235/380 |
| 4,799,156 A | 1/1989 | Shabit et al. | 364/401 |
| 4,823,264 A | 4/1989 | Deming | 364/408 |
| 4,839,504 A | 6/1989 | Nakano | 235/379 |
| 4,893,248 A | 1/1990 | Pitts et al. | 364/464 |
| 4,905,826 A | 3/1990 | Martin | 206/286 |
| 4,948,174 A | 8/1990 | Thomson et al. | 283/58 |
| 4,949,272 A | 8/1990 | Vanourek et al. | 364/464 |

| | | | |
|---|---|---|---|
| 4,979,207 A | 12/1990 | Baum et al. | 379/112 |
| 4,992,940 A | 2/1991 | Dworkin | 364/401 |
| 5,027,388 A | 6/1991 | Bradshaw et al. | 379/112 |
| 5,121,945 A | 6/1992 | Thomson et al. | 283/58 |
| 5,197,094 A | 3/1993 | Tillery et al. | 379/91 |
| 5,206,488 A | 4/1993 | Teicher | 235/380 |
| 5,220,501 A | 6/1993 | Lawlor et al. | 364/408 |
| 5,223,699 A | 6/1993 | Flynn et al. | 235/380 |
| 5,229,584 A | 7/1993 | Erickson | 235/375 |
| 5,265,033 A | 11/1993 | Vajk et al. | 364/514 |
| 5,283,829 A | 2/1994 | Anderson | 380/24 |
| 5,287,270 A | 2/1994 | Hardy et al. | 364/408 |
| 5,325,290 A | 6/1994 | Cauffman et al. | 364/401 |
| 5,326,959 A | 7/1994 | Perazza | 235/379 |
| 5,383,113 A | 1/1995 | Kight et al. | 364/401 |
| 5,402,336 A | 3/1995 | Spiegelhoff et al. | 364/401 |
| 5,420,405 A | 5/1995 | Chasek | 235/379 |
| 5,424,938 A | 6/1995 | Wagner et al. | 364/408 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0745947 | 5/1996 |

(Continued)

OTHER PUBLICATIONS

Web Site for Paying Traffic Fines Lauded; [Valley Edition] Troy Anderson Staff Writer. Daily News. Los Angeles, Calif.: Nov 3, 1999. p. N.3.*

(Continued)

*Primary Examiner*—Lalita M Hamilton
(74) *Attorney, Agent, or Firm*—DLA Piper LLP (US)

(57) **ABSTRACT**

A process and a device for conducting electronic transactions provides a more effective and efficient way to make a payment over the Internet. This process and device could be used to pay, for example, a Police Administration Ticket or Police Administration Citation via the Internet.

**39 Claims, 6 Drawing Sheets**



**US 7,603,311 B1**

Page 2

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,465,206 | A | 11/1995 | Hilt et al. | 364/406 |
| 5,473,143 | A | 12/1995 | Vak et al. | 235/380 |
| 5,477,038 | A | 12/1995 | Levine et al. | 235/380 |
| 5,483,445 | A | 1/1996 | Pickering | 364/408 |
| 5,496,991 | A * | 3/1996 | Delfer et al. | 235/379 |
| 5,508,817 | A | 4/1996 | Kunigami | 358/402 |
| 5,532,920 | A | 7/1996 | Hatrick et al. | 364/419 |
| 5,557,518 | A | 9/1996 | Rosen | 364/408 |
| 5,570,465 | A | 10/1996 | Tsakanikas | 395/114 |
| 5,590,197 | A | 12/1996 | Chen et al. | 380/24 |
| 5,644,727 | A | 7/1997 | Atkins | 395/240 |
| 5,649,117 | A | 7/1997 | Landry | 395/240 |
| 5,652,786 | A | 7/1997 | Rogers | 379/91 |
| 5,655,089 | A | 8/1997 | Bucci | 395/240 |
| 5,677,955 | A | 10/1997 | Doggett et al. | 380/24 |
| 5,684,965 | A | 11/1997 | Pickering | 395/234 |
| 5,699,528 | A | 12/1997 | Hogan | 395/240 |
| 5,727,249 | A | 3/1998 | Pollin | 705/40.8 |
| 5,832,460 | A | 11/1998 | Bednar et al. | 705/27 |
| 6,070,150 | A | 5/2000 | Remington et al. | 705/34 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | 91/16691 | 4/1991 |
| WO | 93/08545 | 4/1993 |
| WO | 96/08783 | 3/1996 |
| WO | 97/24680 | 7/1997 |

OTHER PUBLICATIONS

Your Wheels; Court System Congestion Snarls Traffic-Ticket Process; [Home Edition] Ralph Vartabedian. Los Angeles Times. Los Angeles, Calif.: Aug 5, 1999. p. 9.*
'www.Speedingticket.Net' Just In Time for Labor Day Holiday Traffic; [1] PR Newswire. New York: Sep. 1, 1998. p. 1.*
U.S. Appl. No. 09/721,728, filed Nov. 25, 2000, Yadav-Ranjan.

* cited by examiner

Case 4:11-cv-04601-PJH   Document 1   Filed 09/16/11   Page 24 of 55



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5

Case 4:11-cv-04601-PJH   Document 1   Filed 09/16/11   Page 29 of 55



INTERNET UTILITY CONCEPTUAL DESIGN

FIG. 6

**1**

## PROCESS AND DEVICE FOR CONDUCTING ELECTRONIC TRANSACTIONS

### RELATED APPLICATIONS

This application claims priority from Provisional Application Ser. Nos. 60/170,829 filed Dec. 14, 1999, entitled "System and process of conducting transactions associated with parking tickets or parking citations using the Internet and e-commerce," 60/167,938 filed Nov. 29, 1999, entitled "System and process of conducting transactions associated with traffic tickets or citations using the Internet and e-commerce," 60/174,123 filed Dec. 31, 1999, entitled "System and process of conducting transactions associated with Emergency vehicles or Police Administrative Citation using the Internet and e-commerce," 60/174,124 filed Dec. 31, 1999, entitled "System and process of conducting transactions associated with Court Tickets, Court Warrants or Court Citations using the Internet and E-commerce," 60/199,910 filed Apr. 26, 2000, entitled "A system and process of conducting transactions associated with Utilities (Water and/or Garbage) using the Internet and E-Commerce," the entire disclosures of which are hereby incorporated herein by reference.

### FIELD OF INVENTION

This invention relates to a process and a device for conducting electronic transactions.

### BACKGROUND

Currently, a Police Administration Citation or Police Administration Ticket is issued to the individual committing the offense who is found to be guilty by the Judicial Department. This would involve the collection of all expenses for the dispatch of Emergency Vehicles, incurred during the course of the incident. A copy of the Police Administration Citation or Police Administration Ticket is entered into the Judicial Department Database manually or from an Electronic Hand held Police Administration Citation issuing device. The individual has the opportunity to pay the Police Administration Citation/ticket by mail with a check, cashiers check or in person with cash within 21 days from the date of the issuance. If no payment has been made, there may be penalties incurred after this time. Once the grace period has run out the, incurred amount is then added to the local Department of Motor Vehicle's registration procedure, also there may be a hold placed on the vehicle registration until the new amount (original+penalties) is paid. This process is very cumbersome.

Currently, the Citation is issued to the individual committing the offense and a copy is entered into the Police Department Database manually. After approximately 45 days the citation is transferred to the Court of County Clerks office, where a warrant is issued and another 15 day grace period begins. The individual has the opportunity pay the citation by mail with a check, cash or cashiers check within the original 45 days or in person during the 15 day grace period. There may be penalties incurred during this time. Once the warrant is issued the individual will then have to appear in front of the Presiding Judge and make arrangements for payment. This may include time-triggered payments or automatic payroll deductions. This process is very cumbersome.

Currently, a Citation is issued to the individual committing the offense who can be found to be guilty or not guilty by the Judicial Department. This would involve the collection of all expenses incurred during the course of the incident/accident. Currently a copy of the citation, warrant or ticket is entered

**2**

into the Judicial Department Database manually. The individual has the opportunity to pay the citation, warrant or ticket by mail with a check, cashiers check or in person with cash within 21 days from the date of the issuance. They also have the option to plead Guilty (and pay the fine issued, set up a court date) or Non-Guilty (and pay the fine and set up a court date) or they can simply pay the fine. If no payment has been made, there may be penalties incurred after this time. Once the grace period has run out the, local Police Department are ordered to find the individual and arrest them. There also may be a hold placed on their bank accounts to secure the amount necessary to satisfy the fine. This process is very cumbersome.

Currently, a Citation is issued to the individual committing the offense and a copy is entered into the Judicial Department Database manually or from an Electronic Hand held citation-issuing device. The individual has the opportunity pay the citation/ticket by mail with a check, a cashiers check or in person with cash within 21 days from the date of the issuance or sign-up for a educational course through the Police Department. If no payment has been made, there may be penalties incurred after this time. Once the grace period has run out the, incurred amount is then added to the local Department of Motor Vehicle's registration procedure, also there may be a hold placed on the vehicle registration until the new amount (original+penalties) is paid. This process is very cumbersome.

Currently, a Utility: water and garbage entity issues a bill to a individual or business. This would involve the collection of funds for the dispatch of Utilities (Water and/or Garbage), incurred during the course of a specified time period. Currently a copy of the Utilities (Water and/or Garbage) is entered into the City/county Database manually. The individual has the opportunity to pay the bill by mail with a check; a cashier's check or in person with cash within 30 days from the date of the invoice. If no payment has been made, there may be penalties incurred after this time. Once the grace period has run out, the incurred amount is then added to the previous months. After 3 months the City may issue a lien on the property in question until the new amount (original+ penalties) is paid. This process is very cumbersome.

### SUMMARY OF THE INVENTION

In one embodiment, this invention deals with Police Administration Citations/Bill or Police Administration Ticket violations for illegal non-moving violation per the rules set by the City, County, State, Township or local government. This invention provides a simpler and more efficient way to pay the Emergency Vehicle, Police Administration Ticket or Police Administration Citation using the Internet. Thus, in one embodiment, this invention provides a cost-effective means of collecting revenue from Police Administration Police Administration Citation and/or Violations using the Internet.

In one embodiment, this invention relates to a system to enable one to pay a traffic Violation Ticket or Citation via the Internet. The system involves a Web Browser who access the Corporate in-house Server in real-time which collects the necessary information and then interacts with the Corporate database for retrieval of vital information and amount balances to satisfy the payment of a Citation or Traffic ticket. This information is then confirmed and used to contact Banks and other Financial Institutions for payment of the Citation or Traffic Violation. The Corporate database is updated in Real-time with all necessary information to satisfy the Citation or Traffic Violation. The Funds are transferred into the Corpo-

US 7,603,311 B1

**3**

rate Bank and a validation voucher is issued via E-mail to the customer and Corporate notifying of this transaction. This invention deals with Traffic Citations or Traffic ticket violations for speeding or any other moving violation per the rules set by the City, County or local government. Thus this invention provides a cost-effective means of collecting revenue from Traffic Citations and/or Violations using the Internet.

In one embodiment, this invention relates to a system to enable one to pay a Court Ticket, Court Warrant or Court Citation via the Internet. The system involves a Web Browser who access the Corporate in-house Server in real-time which collects the necessary information and then interacts with the Corporate database for retrieval of vital information and amount balances to satisfy the payment of the Citation, Warrant or Ticket. This information is then confirmed and used to contact Banks and other Financial Institutions for payment of the Citation, Warrant or Ticket. The Corporate database is updated in Real-time with all necessary information to satisfy the Citation, Warrant or Ticket. The Funds are transferred into the Corporate Bank and a validation voucher is issued via E-mail to the customer and Corporate notifying of this transaction. In one embodiment, this invention deals with Court Citations; Court Warrant or Court Ticket violations for illegal non-moving violation per the rules set by the County, Township, State or local government. This invention provides a simpler and more efficient way to pay the Court Citation, Court Ticket or Court Warrant using the Internet. Thus this invention provides a cost-effective means of collecting revenue from Court Ticket, Court Citations, Court Warrant using the Internet.

In one embodiment, this invention relates to a system to enable one to pay a Parking Violation Ticket or Citation via the Internet. The system involves a Web Browser who access the Corporate in-house Server in real-time which collects the necessary information and then interacts with the Corporate database for retrieval of vital information and amount balances to satisfy the payment of the Citation or Parking Tickets. This information is then confirmed and used to contact Banks and other Financial Institutions for payment of the Citation or Parking Violation. The Corporate database is updated in Real-time with all necessary information to satisfy the Citation or Parking Violation. The Funds are transferred into the Corporate Bank and a validation voucher is issued via E-mail to the customer and Corporate notifying of this transaction. This invention deals with Parking Citations or Parking Ticket violations for Illegal non-moving violation per the rules set by the City, Township or local government. In one embodiment, this invention provides a simpler and more efficient way to pay the Parking Tickets or Citation using the Internet. Thus this invention provides a cost-effective means of collecting revenue from Parking Citations and/or Violations using the Internet.

In one embodiment, this invention relates to a system to enable one to pay a Utility (Water/Garbage) Invoice via the Internet. The system involves a Web Browser which access the Corporate in-house Server in real-time which collects the necessary information and then interacts with the Corporate database for retrieval of vital information and amount balances to satisfy the payment of the Invoice for Utilities (Water and/or Garbage). This information is then confirmed and used to contact Banks and other Financial Institutions for payment of the Invoice. The Corporate database is update with all necessary information to satisfy the Invoice. The Funds are transferred into the Corporate Bank and a validation voucher is issued via E-mail to the customer and Corporate notifying of this transaction. This invention deals with Utilities (Water and/or Garbage) for City, County, State, Township or local

**4**

government. In one embodiment, this invention provides a simpler and more efficient way to pay the Utilities (Water and/or Garbage) using the Internet. Thus this invention provides a cost-effective means of collecting revenue from the customers using the Internet.

One embodiment of this invention relates to a process for conducting a transaction using a medium, comprising generating a receipt and a payment remittance information; enabling an entity to authorize a payment due on the receipt; and associating the payment with the payment remittance information; wherein the payment remittance information is arranged within a data structure according to a prescribed format, the data structure comprising one or more open data fields to hold data that the entity can enter, and the payment remittance information further comprises a structured remittance data that is kept hidden from the entity.

Another embodiment relates to process of executing computer-executable instructions using a medium, comprising storing a receipt and a payment remittance information, the payment remittance information comprising a structured remittance data that is kept hidden from an entity; presenting the receipt to the entity without revealing the structured remittance data; enabling the entity to specify payment instructions comprising at least an amount to be paid on the receipt and an account at a payor from which to draw the amount while prohibiting the entity from altering data contained in the structured remittance data; associating the payment instructions with the structured remittance data; transmitting the payment instructions to the payor to initiate payment of the amount; and routing the amount to a payee.

Another embodiment relates to a device, comprising means for generating a receipt and a payment remittance information; means for enabling an entity to authorize a payment due on the receipt; and means for associating the payment with the payment remittance information; wherein the device conducts a transaction using a medium, and wherein the payment remittance information is arranged within a data structure according to a prescribed format, the data structure comprising one or more open data fields to hold data that the entity can enter, and the payment remittance information further comprises a structured remittance data that is kept hidden from the entity.

Still another embodiment relates to a device, comprising means for storing a receipt and a payment remittance information, the payment remittance information comprising a structured remittance data that is kept hidden from an entity; means for presenting the receipt to the entity without revealing the structured remittance data; means for enabling the entity to specify payment instructions comprising at least an amount to be paid on the receipt and an account at a payor from which to draw the amount while prohibiting the entity from altering data contained in the structured remittance data; means for associating the payment instructions with the structured remittance data; means for transmitting the payment instructions to the payor to initiate payment of the amount; and means for routing the amount to a payee.

The receipt is selected from the group consisting of a traffic ticket, a citation, a utility bill, a court ticket, a court warrant, hospital receipt, a rental receipt, a property tax receipt, a property transfer tax receipt, a business permits receipt, a business license receipt, a business license renewal receipt, an administrative citation receipt, a facility rental receipt, a class sign-up receipt, a building permit receipt, a planning permit receipt, an airport use receipt, a roads and highway receipt, a fire department receipt, a waste disposal receipt, a recycling waste bill, a marriage license receipt, a birth certificate receipt, a death certificate receipt, a lien receipt, a passport

US 7,603,311 B1

5

application receipt, a passport renewal receipt, a visa application receipt, a visa renewal receipt, a land development maps receipt, an United States Geological Service Maps Division receipt, an Internal Revenue Service receipt, a State Tax Board receipt, a Driver's license renewal receipt, a Vehicle License tags renewal receipt, a car insurance receipt, an electric bill, a phone bill, a gas bill, a water receipt, a business tax receipt and a parking ticket.

The medium or device is selected from the group consisting of a computer, a cellular telephone, a portal, a network, Internet, smart cards, a wireless access device, smart crystals, hand-held display screens, fiber optics, digital optical readers, digital print readers, a broadband network, a DVD-ROM, a CD-RW, a telecommunication line cord, a bio-crystal network, bar codes, data crystals, artificial intelligence, laser scanners and computer-executable instructions.

The entity is selected from the group consisting of a citizen, a business, an institution, an agency and a university. The payor is selected from the group consisting of a bank, an entity and a credit card facility. The payee is selected from the group consisting of an intermediary, a government agency, a government department, a business, citizens and a collection agency.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 schematically shows a three-tier system architecture layout for an entity hardware and software design process of conducting transactions associated with Court Tickets, Court Warrants or Court Citations using the Internet and E-commerce.

FIG. 2 schematically show a three-tier system architecture layout for an entity hardware and software design process of conducting transactions associated with Traffic Tickets or Citations using the Internet and E-commerce.

FIG. 3 schematically show a three-tier system architecture layout for an entity hardware and software design process of conducting transactions associated with Emergency Vehicles or Police Administrative Citation using the Internet and E-commerce

FIG. 4 schematically show a three-tier system architecture layout for an entity hardware and software design process of conducting transactions associated with Parking Tickets or Parking Citations using the Internet and E-commerce.

FIG. 5 schematically shows a three-tier system architecture layout for an entity hardware and software design process of conducting transactions associated with Utilities (Water, sewer, property tax and/or Garbage) using the Internet and E-Commerce.

FIG. 6 schematically shows a three-tier system architecture layout for an entity hardware and software design process of conducting transactions using the Internet and E-Commerce.

DETAILED DESCRIPTION

FIG. 6 schematically shows an overview of a three-tier system architecture layout for an entity hardware and software design process of conducting transactions, for example associated with Utilities, using the Internet and E-Commerce. Different preferred embodiments of this invention are described below.

In one embodiment, this invention relates to enable one to pay a Police Administration Ticket or Police Administration Citation via the Internet. The system involves a Web Browser who access the Corporate in-house Server in real-time which collects the necessary information and then interacts with the Corporate database for retrieval of vital

6

information and amount balances to satisfy the payment of the Police Administration Citation or Emergency Vehicles. This information is then confirmed and used to contact Banks and other Financial Institutions for payment of the Police Administration Citation or Police Administrative Violation. The Corporate database is update with all necessary information to satisfy the Police Administration Citation or Police Administrative Violation. The Funds are transferred into the Corporate Bank and a validation voucher is issued via E-mail to the customer and Corporate notifying of this transaction. This invention relates to a system, which allows one to pay Police Administration ticket or Police Administration Citation via the Internet in a very convenient manner. This is expected to help the local Police Administration office or City, County, State, Judicial Department in collecting the funds in a more timely manner, allowing the payee to continue to be a good citizen, and possibly be able to track the payments with less number of staffs.

In one embodiment, this invention involves the payment of a Police Administration Ticket or Police Administration Citation issued by a City, County, State, Judicial Department or Office of the Court Clerks to be paid over the Internet using E-commerce and TPA's (Trading Partner agreements), banks and Financial Institutions. This standard method for making payments will be replaced with Electronic Data Interchange (EDI) and Electronic Funds Transfer (EFT); this will be done in real-time. Their License Plate Number and necessary information would be updated to the Corporate database and the appropriate funds (retrieved from Corporate database) would have to be paid. Once the payment has been made The Office of the Court of Clerks, Justice department or City, County, State, County Judicial Department would then be notified of the payment and funds would be transferred into their bank account. The customer would receive a verification number that the process was completed successfully. If the payment is made during the original time period then no further action is warranted; however if the warrant is issued, then the Department of Motor Vehicle would also have to be notified of the satisfaction of debt. The system also connects multiple users across a variety of systems. This system enables the delivery of secure Internet payment capabilities to the Corporate of this service provider. Payment Manager enables ISP's (Internet Service providers), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), Banks and Financial Institutions to quickly and easily link the Customer to Corporation payment processors to handle the complex e-commerce transactions. The software integrates with virtually all business processes and applications, and works with multiple operating systems and databases using customized software for uploading and downloading of necessary information files.

In one embodiment, this invention relates to a system, which allows one to pay Traffic Violations ticket or Citation via the Internet in a very convenient manner. This is expected to help the local city police department in collecting the funds in a more timely manner, and possibly be able to track the payments with less number of staffs.

In one embodiment, this invention involves the payment of a Traffic Ticket or Traffic Citation issued by a City Police Department to be paid over the Internet using E-commerce, banks and Financial Institutions. This standard method for making payments will be replaced with Electronic Data Interchange (EDI) and Electronic Funds Transfer (EFT). This will be done in real-time. Once the payment has been made the City Police Department (Corporate) would then be notified of the payment and funds would be transferred into their bank account. The customer would receive a verification number

US 7,603,311 B1

7

that the process was completed successfully. The system also connects multiple users across a variety of systems. This system enables the delivery of secure Internet payment capabilities to the Corporate of this service provided. Payment Manager enables ISP's, CSPs, Asp's, Banks and Financial Institutions to quickly and easily link the Customer to Corporation payment processors to handle today's complex e-commerce transactions. The software integrates with virtually all business processes and applications, and works with multiple operating systems and databases using customized software for uploading of necessary information files.

In one embodiment, this invention relates to a system, which allows one to pay Court Citation, Court Tickets, and Court Warrant via the Internet in a very convenient manner. This is expected to help the local Court of Clerks or City Judicial Department in collecting the funds in a more timely manner, allow the payee to continue to be a good citizen and be able to track the payments with less number of staffs.

In one embodiment, this invention involves the payment of a Court Ticket, Court Warrant or Court Citation issued by a City Judicial Department or Office of the Court of Clerks to be paid over the Internet using E-commerce and TPA's (Trading Partner agreements), banks and Financial Institutions. This standard method for making payments will be replaced with Electronic Data Interchange (EDI) and Electronic Funds Transfer (EFT), this will be done in real-time. Their name and necessary information would be updated to the Corporate database and the appropriate funds (retrieved from Corporate database) would have to be paid. Once the payment has been made The Office of Court of Clerks, City, County Department would then be notified of the payment and funds would be transferred into their bank account. The customer would receive a verification number that the process was completed successfully via e-mail.

The system also connects multiple users across a variety of systems. This system enables the delivery of secure Internet payment capabilities to the Corporate of this service provided. Payment Manager enables ISP's (Internet Service providers), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), Banks and Financial Institutions to quickly and easily link the Customer to Corporation payment processors to handle the complex e-commerce transactions. The software integrates with virtually all business processes and applications, and works with multiple operating systems and databases using customized software for uploading and downloading of necessary information files.

In one embodiment, this invention relates to a system which allows one to pay Parking Violations ticket or Citation and sign-up for the drivers training school, via the Internet in a very convenient manner. This is expected to help the local Parking Violations office or City Judicial Department in collecting the funds in a more timely manner, and possibly be able to track the payments with less number of staffs.

In one embodiment, this invention involves the payment of a Parking Ticket or Parking Citation issued by a City Judicial Department or Office of Parking Violations to be paid over the Internet using E-commerce and TPA's (Trading Partner agreements), banks and Financial Institutions. This standard method for making payments will be replaced with Electronic Data Interchange (EDI) and Electronic Funds Transfer (EFT), this will be done in real-time. If the individual chooses

8

to sign-up for the driver's training school, their name and necessary information would also be updated to the Corporate database and the appropriate funds (retrieved from Corporate database) would have to be paid. Once the payment has been made The Office of Parking Violations/City Judicial Department (Corporate) would then be notified of the payment and funds would be transferred into their bank account. The customer would receive a verification number that the process was completed successfully. The system also connects multiple users across a variety of systems. This system enables the delivery of secure Internet payment capabilities to the Corporate of this service provided. Payment Manager enables ISP's (Internet Service providers), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), Banks and Financial Institutions to quickly and easily link the Customer to Corporation payment processors to handle today's complex e-commerce transactions. The software integrates with virtually all business processes and applications, and works with multiple operating systems and databases using customized software for uploading and downloading of necessary information files.

In one embodiment, this invention relates to a system, which allows one to pay a Utility bill (Water/Garbage) via the Internet in a very convenient manner. This is expected to help the local City, County, State, Accounting Departments in collecting the funds in a more timely manner, allowing the payee to continue to be a good citizen, and possibly be able to track the payments with less number of staffs.

In one embodiment, this invention involves the payment of a Utilities (Water/Garbage) bill to be paid over the Internet using E-commerce and TPA's (Trading Partner agreements), banks and Financial Institutions. This standard method for making payments will be replaced with Electronic Data Interchange (EDI) and Electronic Funds Transfer (EFT), this will be done in real-time. The information would be updated to the Corporate database and the appropriate funds (retrieved from Corporate database) would have to be paid. Once the payment has been made The Office of the Finance Director or other appropriate official Department would then be notified of the payment and funds would be transferred into their bank account. The customer would receive a verification number that the process was completed successfully. If the payment is made during the original time period then no further action is warranted; however if the lien were issued, then the Office of Court of Clerks would also have to be notified of the satisfaction of debt. The system also connects multiple users across a variety of systems. This system enables the delivery of secure Internet payment capabilities to the Corporate of this service provider. Payment Manager enables ISP's (Internet Service providers), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), Banks and Financial Institutions to quickly and easily link the Customer to Corporation payment processors to handle the complex e-commerce transactions. The software integrates with virtually all business processes and applications, and works with multiple operating systems and databases using customized software for uploading and downloading of necessary information files.

Table 1 shows the preferred means for various means for doing different functions of this invention.

US 7,603,311 B1

9                                                                          10

TABLE 1

| | |
|---|---|
| means for generating a receipt and a payment remittance information | Internet, Smart cards, Wireless access device, smart crystals, hand-held display screens, fiber optics, VAN (Value Added Network) database, digital print readers, digital optical readers, DVD-ROM, CD-RW, Telecommunication line cord, bio-crystal network, Secure Socket Layers (SSL)--order of magnitude better, keyboard, bar codes, laser scanners, User Interface without Server (UIwS) and computer-executable instructions |
| means for enabling an entity to authorize a payment due on the receipt | Computer instructions, computer generated instructions, VAN (Value Added Network) database, keyboard, Secure Socket Layers (SSL)-order of magnitude better, instructions initiated by a entity, User Interface without Server (UIwS), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol) and |
| means for associating the payment with the payment remittance information | Computer instructions, computer generated instructions, VAN (Value Added Network) database, instructions initiated by a entity and keyboard |
| means for storing a receipt and a payment remittance information, the payment remittance information comprising a structured remittance data that is kept hidden from an entity | Computer storage disk drive, data crystals, VAN (Value Added Network) database, artificial intelligence, wireless storage networks, smart cards and keyboard |
| means for presenting the receipt to the entity without revealing the structured remittance data;. | Computer storage disk drive, data crystals, VAN (Value Added Network) database, artificial intelligence, Secure Socket Layers (SSL)-order of magnitude better, wireless storage networks, smart cards, ISP's (Internet Service providers), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), keyboard and User Interface without Server (UIwS) |
| means for enabling the entity to specify payment instructions comprising at least an amount to be paid on the receipt and an account at a payor from which to draw the amount while prohibiting the entity from altering data contained in the structured remittance data; | Computer storage disk drive, data crystals, VAN (Value Added Network) database, artificial intelligence, smart Secure Sockets Layer (SSL), wireless storage networks, smart cards, ISP's (Internet Service providers), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), keyboard and User Interface without Server (UIwS) |
| means for associating the payment instructions with the structured remittance data; | VAN (Value Added Network) database, SHTP's (Secure Hypertext Transfer Protocol) and keyboard |
| means for transmitting the payment instructions to the payor to initiate payment of the amount; | A computer, a cellular telephone, a portal, a network, Internet, smart cards, VAN (Value Added Network) database, a wireless access device, smart crystals, hand-held display screens, fiber optics, digital optical readers, digital print readers, a broadband network, a DVD-ROM, a CD-RW, a telecommunication line cord, a bio-crystal network, bar codes, data crystals, keyboard, artificial intelligence, laser scanners, Secure Socket Layers(SSL)-order of magnitude better, ISP's (Internet Service providers), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), User Interface without Server (UIwS) and computer-executable instructions. |
| means for routing the amount to a payee | VAN (Value Added Network) database, Secure Socket Layers (SSL)-order of magnitude better, keyboard and User Interface without Server (UIwS) |
| means for transmitting the receipt and the payment remittance information to at least an intermediary | A computer, a cellular telephone, a portal, Secure Socket Layers (SSL)--order of magnitude better, a network, Internet, smart cards, a wireless access |

**11**                                                                    **12**

TABLE 1-continued

|  |  |
|---|---|
|  | device, smart crystals, hand-held display screens, fiber optics, digital optical readers, digital print readers, a broadband network, ISP's (Internet Service providers), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), a DVD-ROM, a CD-RW, a telecommunication line cord, a bio-crystal network, VAN (Value Added Network) database, keyboard, bar codes, data crystals, artificial intelligence, laser scanners, User Interface without Server (UIwS), keyboard and computer-executable instructions. |
| means for specifying a payment date | Computer storage disk drive, data crystals, artificial intelligence, Keyboard, Secure Socket Layers (SSL)--order of magnitude better, wireless storage networks, smart cards, VAN (Value Added Network) database, PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), keyboard and User Interface without Server (UIwS) |
| means for designating the payee | Secure Socket Layers (SSL)--order of magnitude better, VAN (Value Added Network) database, SHTP's (Secure Hypertext Transfer Protocol), keyboard and User Interface without Server (UIwS) |
| comprising means for submitting the payment instructions an account clearing house payment system or a credit card processing system | A computer, a cellular telephone, Secure Socket Layers (SSL)-order of magnitude better, a portal, a network, Internet, smart cards, a wireless access device, smart crystals, hand-held display screens, fiber optics, digital optical readers, digital print readers, a broadband network, a DVD-ROM, a CD-RW, a telecommunication line cord, a bio-crystal network, VAN (Value Added Network) database, bar codes, data crystals, artificial intelligence, laser scanners, ISP's (Internet Service providers), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), User Interface without Server (UIwS), keyboard and computer-executable instructions. |
| means for transmitting non-billing information with the receipt | A computer, a cellular telephone, a portal, Secure Socket Layers (SSL)--order of magnitude better, a network, Internet, smart cards, a wireless access device, smart crystals, hand-held display screens, fiber optics, digital optical readers, digital print readers, a broadband network, a DVD-ROM, a CD-RW, VAN (Value Added Network) database, a telecommunication line cord, a bio-crystal network, bar codes, data crystals, artificial intelligence, laser scanners, ISP's(Internet Service providers), PPP's (Point-to-Point Protocol), SHTP's (Secure Hypertext Transfer Protocol), User Interface without Server (UIwS), keyboard and computer-executable instructions. |
| means for encrypting the receipt and the payment instructions | Secure Socket Layers (SSL)--order of magnitude better, VAN (Value Added Network) database, keyboard and SHTP's (Secure Hypertext Transfer Protocol) |
| means for digitally signing the receipt | Secure Socket Layers (SSL)-order of magnitude better, VAN (Value Added Network) database, keyboard and SHTP's (Secure Hypertext Transfer Protocol) and User Interface without Server (UIwS) |
| means for authenticating the receipt | Secure Socket Layers (SSL)-order of magnitude better, VAN (Value Added |

TABLE 1-continued

Network's database, keyboard and
SHTP's (Secure Hypertext Transfer
Protocol)

### Example 1

The following, in conjunction with FIG. 1, describes a typical example of how this system and the process work. A Police Administration Police Administration Citation/Police Administration Ticket is issued. The customer during the next 21 days, using a Web Browser, logs into the Corporation system. He/She then enters either the Police Administration Citation Number or License Plate Number or Driver's license Number and email address or City, County, State, of issuance. The Corporation database locates this Police Administration Citation and displays the amount charged by the City, County, State, Village or Township to satisfy this Emergency Police Administration Citation/Administration Ticket. If the customer agrees to pay the amount charged, the Payment options are displayed for them. If not other data has been already loaded into memory for a fast retrieval to be displayed. He/She then enters a valid Credit Card number, Bank routing number and Account number, ATM card number, smart card, or Cyber Cash option. The system then validates this transaction. Upon payment the Corporation database time-stamp's and date-stamp's this voucher and transmits it to the City, County, State, Village or Township where the issuance occurred; it also notifies the state Department of Motor Vehicle of the payment against the Driver's license number. The finds are also transferred at the same time. The customer receives an e-mail that the Police Administration Citation or Emergency Vehicle Ticket has been satisfied.

Step 1: A Police Administration Citation number or the individual License Plate Number or the City, County, State, of issuance or driver license number and e-mail address and a Unique identification number or Birth date are entered, in a encrypted form through a HTTP server into a VAN (Value Added Network) database where a digital signature is created. The Corporate then searches the appropriate databases to locate the necessary information using a Gateway link, for protocol conversion, with firewalls in place for security. If the Police Administration Citation/Ticket has been transferred to the Department of Motor Vehicles, then a Back-end process is invoked and the necessary information is retrieved using an encrypted form through an HTTP server in to the Corporate database.

Step 2. A Police Administration Citation retrieval system is disclosed that improves a database system's response time so that a user's request to view information is serviced quickly. During the time the user spends viewing the displayed information, other information that the user is likely to read or study later is preloaded into memory. If the user does later request this information, this information can be written to the display very quickly because the information need not be retrieved from the database. This system takes advantage of the fact that it is possible to accurately locate the information that the user will request. Adaptive prediction schemes can be employed as an aid in determining what information the user will request from the Department of Motor Vehicle, Office of Police Administration or Judicial Department (Corporate) where the Police Administration Citation was issued.

Step 3: A method for paying your Police Administration Citation over the Internet is comprised by identifying a digital signature to be paid. A payment price for the Police Administration Citation is stated using Secure Sockets Layer (SSL) and said payment identifier, querying a database of Government Entity (E-Government)-defined rules provided by E-government to determine if said ticket is to be paid to said citizen for said price, said E-government-defined rules including prices which are concealed from said citizen. After the stated step, the customer is then asked to enter an amount of payment, if it is different from the stated amount. An authenticated payment request is sent to the Corporate using SSL with encryption. The Corporate decrypts the desired Police Administration Citation number, driver's license number, or License Plate Number and calculates a first cryptographic dollar amount for the encrypted Police Administration Citation. The encrypted digital Police Administration Citation and the first cryptographic dollar amount together with a timestamp and date-stamp are then transmitted to the customer. This information is then decrypted and the customer confirms a second cryptographic dollar amount and Police Administration Citation number which is also encrypted. The customer creates an electronic payment order containing information identifying the transaction, the second cryptographic dollar amount, Police Administration Citation number, City, County, State of issuance, date-stamp and the timestamp. The electronic payment order is transmitted to the Banks and Financial Institutions using CGI script for an authorization request. The Corporate compares the first and second cryptographic checksums to ensure that they match, and if so, the Corporate adds an electronic signature and a decryption key to the electronic payment order. The Corporate submits the Corporate signed electronic payment order and the key to an account server for review. The account server reviews the information in the electronic payment order and sends a message, including the key if the review is positive, to the Corporate. Email Notification—automatically sends email to the customer informing them of the payment of the Police Administration Citation and a confirmation number. The Office of Police Administration/City, County, State, Judicial Department's or Department of Motor Vehicles database is then updated with the necessary information to satisfy the Police Administration Citation issued using the decryption key.

### Example 2

The following, in conjunction with FIG. 2, describes a typical example of how this system and the process work. A Citation/Traffic Ticket is issued. The customer during the next 45 days, using a Web Browser, logs into the Corporation system. He/She then enters either the Citation Number or Name, Driver's license Number, Unique identification number or Birth date and City of Citation issued. The Corporation database locates this Citation and displays the amount charged by the City, Village or Township to satisfy this Citation/Traffic Ticket. If the customer agrees, the Payment options are displayed for them. If not other data has been already loaded into memory for a fast retrieval to be displayed. He/She then enters a valid Credit Card number, Bank routing number and Account number, ATM card number, smart card or Cyber Cash option. The system then validates

US 7,603,311 B1

**15**

this transaction. Upon payment the Corporation databases time stamps and date-stamps this voucher and transmits it to the City, Village or Township where the issuance occurred. The funds are also transferred at the same time. The customer receives e-mail that the citation/traffic ticket has been satisfied. The City, Village, Township or County receives a notification via email or printer for reconciliation purposes.

Step 1: A citation number or a name or a city of issuance or driver license number or an e-mail address or a Unique identification number or Birth date are entered in a encrypted form through a HTTP server into a VAN database where a digital signature is created. The Corporate then searches the appropriate database to locate the necessary information using a Gateway link, for protocol conversion, with firewalls in place for security.

Step 2. A citation retrieval system is disclosed that improves a database system's response time so that a user's request to view information is serviced quickly. During the time the user spends viewing the displayed information, other information that the user is likely to read or study later is preloaded into memory. If the user does later request this information, this information can be written to the display very quickly because the information need not be retrieved from the database. The invention takes advantage of the fact that it is possible to accurately locate the information that the user will request. Adaptive prediction schemes can be employed as an aid in determining what information the user will request from the Police Department (Corporate) where the citation was issued.

Step 3: A method for paying your citation over the Internet is comprised by identifying a digital signature to be paid. A payment price for the citation is stated using Secure Sockets Layer (SSL) and said payment identifier, querying a database of Government Entity (E-Government)-defined rules provided by E-government to determine if said ticket is to be paid to said citizen for said price, said E-government-defined rules including prices which are concealed from said citizen. After the stated step, the customer is then asked to enter an amount of payment, if it is different from the stated amount. An authenticated payment request is sent to the Corporate using SSL with encryption. The Corporate decrypts the desired citation number, driver's license number, or name and calculates a first cryptographic dollar amount for the in encrypted citation. The encrypted digital citation and the first cryptographic dollar amount together with a timestamp and date-stamp are then transmitted to the customer. This information is then decrypted and the customer confirms a second cryptographic dollar amount and citation number, which is also encrypted. The customer creates an electronic payment order containing information identifying the transaction, the second cryptographic dollar amount, citation number, city of issuance, date-stamp and the timestamp. The electronic payment order is transmitted to the Banks and Financial Institutions using CGI script for an authorization request. The Corporate compares the first and second cryptographic checksums to ensure that they match, and if so, the Corporate adds an electronic signature and a decryption key to the electronic payment order. The Corporate submits the Corporate signed electronic payment order and the key to an account server for review. The account server reviews the information in the electronic payment order and sends a message, including the key if the review is positive, to the Corporate. Email Notification—automatically sends email to the customer informing them of the payment of the citation and a confirmation number. The City Police department's database is then updated with the necessary information to satisfy the Citation issued using the decryption key.

**16**

Example 3

The following, in conjunction with FIG. **3**, describes a typical example of how this system and the process work. A Court Tickets/Court Warrant or Court Citation is issued. The customer during the next 21 days, using a Web Browser, logs into the Corporation system. He/She then enters either the Citation Number or Name, Unique identification number or Birth date and City of Citation issued. The Corporation database locates this Citation and displays the amount charged by the State, County, Village or Township to satisfy this Citation, Warrant or Ticket. If the customer agrees to pay the fine charged, the Payment options are displayed for them. If not other data has been already loaded into memory for a fast retrieval to be displayed. He/She then enters a valid Credit Card number or Bank routing number and Account number or ATM card number, smart card or Cyber Cash option. The system then validates this transaction. Upon payment the Corporation database time stamps and date-stamps this voucher and transmits it to the State, County, State, Village or Township where the issuance occurred it also notifies of the Local Police Department if necessary of the payment against the Driver's license number of the individual who received the ticket, warrant or citation. The funds are also transferred at the same time. The customer receives an e-mail that the Citation, Warrant or Ticket has been satisfied.

Step 1: A citation number or the individual name and the City of issuance and driver license number are entered, in a encrypted form through a HTTP server into a VAN (Value Added Network) database where a digital signature is created. The Corporate then searches the appropriate databases to locate the necessary information using a Gateway link, for protocol conversion, with firewalls in place for security. If the Citation, Warrant or Ticket has been transferred to the Police Department, then a Back-end process is invoked and the necessary information is retrieved using a encrypted form through a HTTP server in to the Corporate database.

Step 2. A citation retrieval system is disclosed that improves a database system's response time so that a user's request to view information is serviced quickly. During the time the user spends viewing the displayed information, other information that the user is likely to read or study later is preloaded into memory. If the user does later request this information, this information can be written to the display very quickly because the information need not be retrieved from the database. The system takes advantage of the fact that it is possible to accurately locate the information that the user will request. Adaptive prediction schemes can be employed as an aid in determining what information the user will request from the Police Department, Office of Court of Clerks or Financial Institutions (Corporate) where the citation was issued.

Step 3: A method for paying your citation over the Internet is comprised by identifying a digital signature to be paid. A payment price for the citation is stated using Secure Sockets Layer (SSL) and said payment identifier, querying a database of Government Entity (E-Government)-defined rules provided by E-government to determine if said ticket is to be paid to said citizen for said price, said E-government-defined rules including prices which are concealed from said citizen. After the stated step, the customer is then asked to enter an amount of payment, if it is different from the stated amount. An authenticated payment request is sent to the Corporate using SSL with encryption. The Corporate decrypts the desired citation number, driver's license number, or name and calculates a first cryptographic dollar amount for the encrypted citation. The encrypted digital citation and the first crypto-

US 7,603,311 B1

**17**

graphic dollar amount together with a timestamp and date-stamp are then transmitted to the customer. This information is then decrypted and the customer confirms a second cryptographic dollar amount and citation number, which is also encrypted. The customer creates an electronic payment order containing information identifying the transaction, the second cryptographic dollar amount, citation number, City of issuance, date-stamp and the timestamp. The electronic payment order is transmitted to the Banks and Financial Institutions using CGI script for an authorization request. The Corporate compares the first and second cryptographic checksums to ensure that they match, and if so, the Corporate adds an electronic signature and a decryption key to the electronic payment order. The Corporate submits the Corporate signed electronic payment order and the key to an account server for review. The account server reviews the information in the electronic payment order and sends a message, including the key if the review is positive, to the Corporate. Email Notification—automatically sends email to the customer informing them of the payment of the citation and a confirmation number. The Office of Court Of Clerks/City Judicial Department's or Police Department database is then updated with the necessary information to satisfy the Citation, Warrant or Ticket issued using the decryption key.

### Example 4

The following describes a typical example of how this system and the process work. A Parking Citation/Parking Ticket is issued. The customer during the next 21 days, using a Web Browser, logs into the Corporation system. He/She then enters either the Citation Number or Name, Driver's license Number, Unique identification number or Birth date and City of Citation issued. The Corporation database locates this Citation and displays the amount charged by the City, Village or Township to satisfy this Citation/Parking Tickets. If the customer agrees to pay the fine charged, the Payment options are displayed for them. If not other data has been already loaded into memory for a fast retrieval to be displayed, and the option of Drivers Training School is shown with the amount necessary to sign-up for it. He/She then enters a valid Credit Card number, Bank routing number and Account number, ATM card number, smart card or Cyber Cash option. The system then validates this transaction. Upon payment the Corporation database time stamps and date-stamps this voucher and transmits it to the City, Village or Township where the issuance occurred it also notifies the state Department of Motor Vehicle of the payment against the Driver's license number of the individual who received the ticket/citation. The funds are also transferred at the same time. The customer receives an e-mail that the Citation/Parking Tickets has been satisfied.

Step 1: A citation number or the individual name or the City of issuance or driver license number or an e-mail address or a Unique identification number or Birth date are entered, in a encrypted form through a HTTP server into a VAN (Value Added Network) database where a digital signature is created. The Corporate then searches the appropriate databases to locate the necessary information using a Gateway link, for protocol conversion, with firewalls in place for security. If the Citation/Ticket has been transferred to the Department of Motor Vehicles, then a Back-end process is invoked and the necessary information is retrieved using an encrypted form through an HTTP server in to the Corporate database and said payment identifier, querying a database of Government Entity (E-Government)-defined rules provided by E-government to determine if said ticket is to be paid to said citizen for said

**18**

price, said E-government-defined rules including prices which are concealed from said citizen.

Step 2. A citation retrieval system is disclosed that improves a database system's response time so that a user's request to view information is serviced quickly. During the time the user spends viewing the displayed information, other information that the user is likely to read or study later is preloaded into memory. If the user does later request this information, this information can be written to the display very quickly because the information need not be retrieved from the database. The invention takes advantage of the fact that it is possible to accurately locate the information that the user will request. Adaptive prediction schemes can be employed as an aid in determining what information the user will request from the Department of Motor Vehicle, Office of Parking Violations or Judicial Department (Corporate) where the citation was issued.

Step 3: A method for paying your citation over the Internet is comprised by identifying a digital signature to be paid. A payment price for the citation is stated using Secure Sockets Layer (SSL). After the stated step, the customer is then asked to enter an amount of payment, if it is different from the stated amount. An authenticated payment request is sent to the Corporate using SSL with encryption. The Corporate decrypts the desired citation number, driver's license number, or name and calculates a first cryptographic dollar amount for the encrypted citation. The encrypted digital citation and the first cryptographic dollar amount together with a timestamp and date-stamp are then transmitted to the customer. This information is then decrypted and the customer confirms a second cryptographic dollar amount and citation number, which is also encrypted. The customer creates an electronic payment order containing information identifying the transaction, the second cryptographic dollar amount, citation number, City of issuance, date-stamp and the timestamp. The electronic payment order is transmitted to the Banks and Financial Institutions using CGI script for an authorization request. The Corporate compares the first and second cryptographic checksums to ensure that they match, and if so, the Corporate adds an electronic signature and a decryption key to the electronic payment order. The Corporate submits the Corporate signed electronic payment order and the key to an account server for review. The account server reviews the information in the electronic payment order and sends a message, including the key if the review is positive, to the Corporate. Email Notification—automatically sends email to the customer informing them of the payment of the citation and a confirmation number. The Office of Parking Violations/City Judicial Department's or Department of Motor Vehicles database is then updated with the necessary information to satisfy the Citation issued using the decryption key.

### Example 5

The following, in conjunction with FIG. **5**, describes a typical example of how this system and the process work. A invoice is generated, the customer during the next 30 days, using a Web Browser, logs into the City/County/Corporation system. He/She then enters either the invoice number or property address or City or County of issuance and e-mail address. The City/County/Corporation database locates this invoice number and displays the amount charged by the City, County, Village or Township to satisfy this invoice. If the customer agrees to pay the amount charged, the Payment options are displayed for them. If not other data has been already loaded into memory for a fast retrieval to be displayed. He/She then enters a valid Credit Card number, Bank routing number and

US 7,603,311 B1

**19**

Account number, ATM card number, smart card or Cyber Cash option. The system then validates this transaction. Upon payment the Corporation database time stamps and date-stamps this voucher and transmits it to the City, County, State, Village or Township where the issuance occurred; it also notifies the state Department of Motor Vehicle of the payment against the Driver's license number. The funds are also transferred at the same time. The customer receives an e-mail that the invoice has been satisfied.

Step 1: A Invoice number or the individual property address and the City, State, are entered, in an encrypted form through a HTTP server into a VAN (Value Added Network) database where a digital signature is created. The Corporate then searches the appropriate databases to locate the necessary information using a Gateway link, for protocol conversion, with firewalls in place for security. If the Invoice has been transferred to the Office for the Court of Clerks, then a Back-end process is invoked and the necessary information is retrieved using an encrypted form through an HTTP server in to the City/County/Corporate database.

Step 2. A Invoice retrieval system is disclosed that improves a database system's response time so that a user's request to view information is serviced quickly. During the time the user spends viewing the displayed information, other information that the user is likely to read or study later is preloaded into memory. If the user does later request this information, this information can be written to the display very quickly because the information need not be retrieved from the database. This system takes advantage of the fact that it is possible to accurately locate the information that the user will request. Adaptive prediction schemes can be employed as an aid in determining what information the user will request from the City/County/Corporation where the Invoice was issued.

Step 3: A method for paying your Invoice over the Internet is comprised by identifying a digital signature to be paid. A payment price for the Invoice is stated using Secure Sockets Layer (SSL) and said payment identifier, querying a database of Government Entity (E-Government)-defined rules provided by E-government to determine if said ticket is to be paid to said citizen for said price, said E-government-defined rules including prices which are concealed from said citizen. After the stated step, the customer is then asked to enter an amount of payment, if it is different from the stated amount. An authenticated payment request is sent to the Corporate using SSL with encryption. The Corporate decrypts the desired Invoice number, property address and calculates a first cryptographic dollar amount for the encrypted Invoice. The encrypted digital Invoice and the first cryptographic dollar amount together with a timestamp and date-stamp are then transmitted to the customer. This information is then decrypted and the customer confirms a second cryptographic dollar amount and Invoice number, which is also encrypted. The customer creates an electronic payment order containing information identifying the transaction, the second cryptographic dollar amount, Invoice number, City, State of issuance, date-stamp and the timestamp. The electronic payment order is transmitted to the Banks and Financial Institutions using CGI script for an authorization request. The Corporate compares the first and second cryptographic checksums to ensure that they match, and if so, the Corporate adds an electronic signature and a decryption key to the electronic payment order. The Corporate submits the Corporate signed electronic payment order and the key to an account server for review. The account server reviews the information in the electronic payment order and sends a message, including the key if the review is positive, to the Corporate. Email Notifi-

**20**

cation—automatically sends email to the customer informing them of the payment of the and a confirmation number. The Accounting office or other relevant office for the City, County, State database is then updated with the necessary information to satisfy the Invoice issued using the decryption key.

The above description is presented to enable a person skilled in the art to make and use the invention, and is provided in the context of a particular application and its requirements. Various modifications to the preferred embodiments will be readily apparent to those skilled in the art, and the generic principles defined herein may be applied to other embodiments and applications without departing from the spirit and scope of the invention. Thus, this invention is not intended to be limited to the embodiments shown, but is to be accorded the widest scope consistent with the principles and features disclosed herein.

What is claimed is:

1. A method for conducting a transaction using a medium based on a receipt having payment remittance information, comprising:

   enabling a payor to authorize a payment due on the receipt to a payee;

   associating, using a processor, the payment with the payment remittance information;

   communicating, using the processor, the payment instructions directly to the payee to initiate payment of the amount; and

   wherein the payment remittance information is arranged within a data structure, the data structure comprising one or more data fields to hold data that the payor can enter, and the payment remittance information further comprises a structured remittance data that is kept hidden from the payee.

2. The method of claim 1, further comprising:

   presenting the receipt to the payee without revealing the structured remittance data; communicating payment instructions to a payor to initiate payment of an amount to be paid on the receipt; and routing the amount to a payee;

   wherein the enabling the entity comprises specifying the payment instructions comprising at least the amount and an account at the payor from which to draw the amount.

3. A method of executing computer-executable instructions residing on a medium and executed by a processor, comprising:

   storing a receipt and a payment remittance information in a memory, the payment remittance information comprising a structured remittance data that is kept hidden from a payee;

   presenting the receipt to the payee without revealing the structured remittance data;

   enabling the payor to specify payment instructions comprising at least an amount to be paid on the receipt and an account at a payor from which to draw the amount while prohibiting the payor from altering data contained in the structured remittance data;

   associating the payment instructions with the structured remittance data;

   communicating the payment instructions from the memory directly to the payor to initiate payment of the amount; and

   routing the amount to a payee.

4. The method of claim 1, 3 or 2, further comprising communicating the receipt and the payment remittance information to at least an intermediary.

21

· **5**. The method of claim **4**, wherein the communicating the receipt and the payment remittance information is performed electronically.

**6**. The method of claim **3**, or **2**, wherein the receipt is selected from the group consisting of a traffic ticket, a citation, a utility bill, a court ticket, a court warrant, hospital receipt, a rental receipt, a property tax receipt, a property transfer tax receipt, a business permits receipt, a business license receipt, a business license renewal receipt, an administrative citation receipt, a facility rental receipt, a class sign-up receipt, a building permit receipt, a planning permit receipt, an airport use receipt, a roads and highway receipt, a fire department receipt, a waste disposal receipt, a recycling waste bill, a marriage license receipt, a birth certificate receipt, a death certificate receipt, a lien receipt, a passport application receipt, a passport renewal receipt, a visa application receipt, a visa renewal receipt, a land development maps receipt, an United States Geological Service Maps Division receipt, an Internal Revenue Service receipt, a State Tax Board receipt, a Driver's license renewal receipt, a Vehicle License tags renewal receipt, a car insurance receipt, an electric bill, a phone bill, a gas bill, a water receipt, a business tax receipt and a parking ticket; and

wherein the medium optionally comprises a memory device storing a program and is selected from the group consisting of a computer, a cellular telephone, a portal, a network, Internet, smart cards, a wireless access device, smart crystals, hand-held display screens, fiber optics, digital optical readers, digital print readers, a broadband network, a DVD-ROM, a CD-RW, a telecommunication line cord, a bio-crystal network, bar codes, Secure Sockets Layer, Hyper text Socket Layer, data crystals, artificial intelligence, laser scanners and computer-executable instructions.

**7**. The method of claim **3** or **2**, wherein the communicating payment instructions to a payor is performed electronically.

**8**. The method of claim **3** or **2**, wherein the routing the amount is performed electronically.

**9**. The method of claim **3** or **2**, wherein the presenting the receipt is performed electronically.

**10**. The method of claim **3** or **2**, wherein the payor is selected from the group consisting of a bank, an entity and a credit card facility.

**11**. The method of claim **3** or **2**, wherein the payee is selected from the group consisting of an intermediary, a government agency, a government department, a business, citizens and a collection agency.

**12**. The method of claim **3** or **2**, wherein the enabling the payor further comprises specifying a payment date.

**13**. The method of claim **3** or **2**, wherein the routing the amount to a payee is without intervention of the payee.

**14**. The method of claim **3** or **2**, further comprising designating the payee.

**15**. The method of claim **3** or **2**, further comprising submitting the payment instructions an account clearing house payment system or a credit card payment system.

**16**. The method of claim **3** or **2**, further comprising communicating non-billing information with the receipt.

**17**. The method of claim **3**, or **2**, further comprising encrypting the receipt and the payment instructions.

**18**. The method of claim **3**, or **2**, further comprising digitally signing the receipt.

**19**. The method of claim **3**, or **2**, further comprising authenticating the receipt.

**20**. A device, comprising:

means for generating a receipt and a payment remittance information;

22

means for enabling a payor to authorize a payment due on the receipt; and

means for associating the payment with the payment remittance information;

means for communicating the payment instructions directly to the payor to initiate payment of the amount; and

wherein the device conducts a transaction using a medium, wherein the payment remittance information is arranged within a data structure, the data structure comprising one or more open data fields to hold data that the payor can enter, and the payment remittance information further comprises a structured remittance data that is kept hidden from the payee.

**21**. The device of claim **20**, further comprising:

means for presenting the receipt to the entity without revealing the structured remittance data; means for communicating payment instructions to a payor to initiate payment of an amount to be paid on the receipt; and means for routing the amount to a payee;

wherein the mean for enabling the entity comprises means for specifying the payment

instructions comprising at least the amount and an account at the payor from which to draw the amount.

**22**. A device, comprising:

means for storing a receipt and a payment remittance information, the payment remittance information comprising a structured remittance data that is kept hidden from a payee;

means for presenting the receipt to the payee without revealing the structured remittance data;

means for enabling the payor to specify payment instructions comprising at least an amount to be paid on the receipt and an account at a payor from which to draw the amount while prohibiting the payor from altering data contained in the structured remittance data; means for associating the payment instructions with the structured remittance data;

means for communicating the payment instructions directly to the payor to initiate payment of the amount; and

means for routing the amount to a payee.

**23**. The device of claim **20**, **22** or **21**, further comprising means for communicating the receipt and the payment remittance information to at least an intermediary.

**24**. The device of claim **22**, wherein the means for communicating the receipt and the payment remittance information is electronic.

**25**. The device of claim **20**, **22** or **21**, wherein the receipt is selected from the group consisting of a traffic ticket, a citation, a utility bill, a court ticket, a court warrant, hospital receipt, a rental receipt, a property tax receipt, a property transfer tax receipt, a business permits receipt, a business license receipt, a business license renewal receipt, an administrative citation receipt, a facility rental receipt, a class sign-up receipt, a building permit receipt, a planning permit receipt, an airport use receipt, a roads and highway receipt, a fire department receipt, a waste disposal receipt, a recycling waste bill, a marriage license receipt, a birth certificate receipt, a death certificate receipt, a lien receipt, a passport application receipt, a passport renewal receipt, a visa application receipt, a visa renewal receipt, a land development maps receipt, an United States Geological Service Maps Division receipt, an Internal Revenue Service receipt, a State Tax Board receipt, a Driver's license renewal receipt, a Vehicle License tags renewal receipt, a car insurance receipt,

US 7,603,311 B1

**23**

an electric bill, a phone bill, a gas bill, a water receipt, a business tax receipt and a parking ticket.

**26**. The device of claim **22** or **21**, wherein the means for communicating payment instructions to a payor is electronic.

**27**. The device of claim **22** or **21**, wherein the means for routing the amount is electronic.

**28**. The device of claim **22** or **21**, wherein the means for presenting the receipt is electronic.

**29**. The device of claim **22** or **21**, wherein the payor is selected from the group consisting of a bank, an entity and a credit card facility.

**30**. The device of claim **22** or **21**, wherein the payee is selected from the group consisting of an intermediary, a government agency, a government department, a business, citizens and a collection agency.

**31**. The device of claim **22** or **21**, wherein the means for enabling the payor further comprises means for specifying a payment date.

**32**. The device of claim **22** or **21**, wherein the means for routing the amount to a payee is without intervention of the payee.

**33**. The device of claim **22** or **21**, further comprising means for designating the payee.

**24**

**34**. The device of claim **22** or **21**, further comprising means for submitting the payment instructions an account clearing house payment system or a credit card processing system.

**35**. The device of claim **22** or **21**, further comprising means for communicating non-billing information with the receipt.

**36**. The device of claim **20**, **22** or **21**, further comprising means for encrypting the receipt and the payment instructions.

**37**. The device of claim **20**, **22** or **21**, further comprising means for digitally signing the receipt.

**38**. The device of claim **20**, **22** or **21**, further comprising means for authenticating the receipt.

**39**. The device of claim **20**, **22** or **21**, wherein the device is selected from the group consisting of a computer, a cellular telephone, a portal, a network, Internet, smart cards, a wireless access device, smart crystals, hand-held display screens, fiber optics, digital optical readers, digital print readers, a broadband network, a DVD-ROM, a CD-RW, a telecommunication line cord, a bio-crystal network, bar codes, Secure Sockets Layer, Hyper text Socket Layer, data crystals, artificial intelligence, laser scanners and computer-executable instructions.

*   *   *   *   *

Exhibit B

## INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT

This Intellectual Property Assignment Agreement ("**Agreement**") is entered into as of September 18, 2007 (the "**Effective Date**") by and between Rani Yadav-Ranjan ("**Founder**"); and Construction Navigator Inc., a Delaware corporation with offices at 777 North 1st Street, Suite 615, San Jose, CA 95112 (the "**Company**").

**WHEREAS**, Founder is a founder of the Company; and

**WHEREAS**, certain investors are investing in the Company's Series A Preferred Stock financing (the "**Financing**");

**WHEREAS**, in order to induce such investors to invest in the Financing and in order to increase the value of Founder's equity holdings in the Company, Founder desires to transfer and assign all right, title and interest in and to the Technology, Intellectual Property and Registered Intellectual Property (each as defined below) to the Company; and

**WHEREAS**, it is a condition to the closing of the Financing that Founder transfers and assign all right and title and interest in and to the Technology, Intellectual Property and Registered Intellectual Property to the Company;

**NOW THEREFORE**, for good and valuable consideration, the value of which both parties acknowledge is sufficient, the parties hereto agree as follows:

### 1. DEFINITIONS

1.1 "**Intellectual Property**" means any or all of the following relating to the Technology and all worldwide common law and statutory rights in, arising out of, or associated therewith: (a) United States and foreign patents and utility models and applications therefor and all reissues, divisions, re-examinations, renewals, extensions, provisionals, continuations and continuations-in-part thereof ("**Patents**"); (b) rights in inventions (whether patentable or not), improvements, trade secrets, proprietary information, know how, and any rights in technology, invention disclosures, technical data and customer lists, and all documentation relating to any of the foregoing; (c) copyrights, copyrights registrations and applications therefor, and all other rights corresponding thereto throughout the world; (d) domain names, uniform resource locators, other names and locators associated with the Internet, and applications or registrations therefor; (e) industrial designs and any registrations and applications therefor; (f) trade names, logos, common law trademarks and service marks, trademark and service mark registrations, related goodwill and applications therefor throughout the world ("**Trademarks**"); (g) all moral and economic rights of authors and inventors, however denominated; and (h) any similar or equivalent rights to any of the foregoing.

1.2 "**Registered Intellectual Property**" means all of the following relating to the Technology: (a) United States, international and foreign registered Trademarks, applications to register Trademarks, including intent-to-use applications, or other registrations or applications related to Trademarks; (b) United States, international and foreign copyrights registrations and applications to register copyrights; (c) United States, international and foreign domain name registration; and (d) any other United States, international and foreign Intellectual Property that is the subject of an application, certificate, filing, registration or other document issued by, filed with, or recorded by, any private, state, government or other public or quasi-public legal authority at any time.

1.3 "**Technology**" means all inventions, products, technology, designs, software, methods, works of authorship, processes, drawings, illustrations, writings, information, ideas and concepts described on **Schedule A**.

### 2. ASSIGNMENT

2.1 **General.** Founder hereby transfers and assigns to the Company all right, title and interest in and to the Technology, Intellectual Property and Registered Intellectual Property. To the extent the Intellectual Property and Registered Intellectual Property includes Trademarks, the foregoing assignment includes all goodwill appurtenant thereto. The foregoing assignment also includes all of Founder's right, title and interest in and to any and all causes of action and rights of recovery for past infringement, or misappropriation of the Intellectual Property and the right to seek Patents claiming the Technology.

2.2 **Further Assurances.** Upon request by the Company at any time, and at the Company's cost and expense, Founder shall execute all documents and instruments and do all other things deemed necessary or useful by the Company in establishing, perfecting, protecting, prosecuting, defending and enforcing the Company's proprietary right, title and interest in the Intellectual Property, at the Company's expense.

2.3 **Attorney in Fact.** Where the Company is unable because of Founder's unavailability, mental or physical incapacity, or for any other reason, to secure Founder's signature to apply for or to pursue any application for any United States or foreign patents or mask work or copyright registrations covering the Intellectual Property or Technology, then Founder hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Founder's agent and attorney in fact, to act for and in Founder's behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of patents, copyright and mask work registrations thereon with the same legal force and effect as if executed by Founder.

2.4 **Delivery and Technology Transfer.** Founder shall, on the Effective Date, deliver to Company the Technology and all copies of any Intellectual Property in Founder's possession, including without limitation any documents relating to Registered Intellectual Property relating to or claiming the Technology.

3. **CONSIDERATION.** As consideration for the assignment of the Technology, Registered Intellectual Property and Intellectual Property by Founder to Company and delivery of the Technology required herein, the Company may acquire funding from investors in the Financing and Founder may potentially realize an increase in the value of her equity holdings in the Company. Both parties mutually acknowledge and agree that this is sufficient consideration for the assignment granted herein.

4. **REPRESENTATIONS AND WARRANTIES BY FOUNDER.** Founder represents and warrants to the Company:

4.1 **Registered Intellectual Property.** Schedule B lists all Registered Intellectual Property owned by, or filed in the name of, Founder. **Schedule B** lists all Registered Intellectual Property that is transferred to the Company by Founder, pursuant to this Agreement.

4.2 **No Infringement.** To the best of Founder's knowledge, the use, reproduction, modification, manufacturing, distribution, licensing, sublicensing, sale, offering for sale, import or any other exploitation of the Intellectual Property or Technology does not, and will not, infringe or misappropriate the intellectual property of any third party.

**4.3 No Outstanding Orders.** To the best of Founder's knowledge, no Intellectual Property including the Registered Intellectual Property is subject to any proceeding or outstanding decree, order, judgment, agreement or stipulation that restricts in any manner the use, transfer or licensing thereof or may affect the validity, use or enforceability of such Intellectual Property.

**4.4 No Invalidity.** Founder has no knowledge of any fact or circumstance that would render any portion of the Intellectual Property invalid or unenforceable. Without limiting the above, Founder knows of no information, materials or facts that would render any of Registered Intellectual Property invalid or unenforceable, or would adversely effect any pending application for any Registered Intellectual Property.

**4.5 No Licenses.** Founder has not entered into any written or oral license agreements, as of the Effective Date, relating to the Intellectual Property, Registered Intellectual Property, Pre-Existing Technology or the Technology.

**4.6 Ownership.** Except to the extent already transferred by Founder to the Company prior to the Effective Date, (a) Founder owns and has good and exclusive title to, all the Technology and Intellectual Property (including all Registered Intellectual Property) free and clear of any lien or encumbrance as of the Effective Date and (b) Founder owns all the Intellectual Property embodied in or claiming the Technology as of the Effective Date. All Intellectual Property embodied in the Technology was developed solely by Founder or in cooperation with other the Company employees.

**4.7 No Third-Party Infringement.** To the knowledge of Founder, no person has infringed or misappropriated, or is infringing or misappropriating, any of the Intellectual Property.

**4.8 Trade Secret Protection.** Founder has taken reasonable steps to protect the trade secret rights related to the Technology.

**5. GENERAL PROVISIONS.** This Agreement is the entire agreement between the parties on the subject matter hereof. No amendment or modification hereof will be valid or binding upon the parties unless made in writing and signed by the duly authorized representatives of both parties. In the event that any provision of this Agreement is held to be unenforceable, this Agreement will continue in full force and effect without said provision and will be interpreted to reflect the original intent of the parties. This Agreement will be governed by the laws of the State of California, without regard to its conflict of laws principles. The parties consent to the personal and exclusive jurisdiction of courts located in California. Founder may not assign this Agreement (by operation of law or otherwise) without the prior written consent of the Company, and any prohibited assignment will be null and void. This Agreement will be binding upon and will inure to the benefit of the parties' permitted successors and assigns. The Company may assign this Agreement in connection with a corporate name-change, reorganization, reincorporation, recapitalization or other corporate transaction that does not effect a change in control of the Company without the consent of Founder. Waiver by either party of a breach of any provision of this Agreement or the failure by either party to exercise any right hereunder will not operate or be construed as a waiver of any subsequent breach of that right or as a waiver of any other right.

*[Reminder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

RANI YADAV-RANJAN

By: _____

Name: *Rani Yadav-Ranjan*

Title: _____

CONSTRUCTION NAVIGATOR INC.

By: _____

Name: *Rani Yadav-Ranjan*

Title: _____

## SCHEDULE A

### TECHNOLOGY

1. The business plan of the Company (the "**Business Plan**") and any and all right, title and interest Founder has in the Company's business and any Intellectual Property related to the Company's business, as currently conducted and as contemplated to be conducted pursuant to the Business Plan or otherwise, including, but not limited to: software development in the area of creating a repository of public information on individuals, businesses and professionals.

2. Source Code
   - Scripts
   - UpdateDb
   - SherInfo
   - UpdateBizInfo
   - AdditionalLics
   - SecState
   - CityBizInfo
   - CityJobInfo
   - CtyBizInfo
   - CtyJobInfo
   - MegansLaw
   - LawyerDB
   - DRAW
   - PrisonInfo
   - OFACInfo
   - OSHAInfo
   - CourtInfo
   - GetNewLics
   - BuildDB
   - SearchException
   - CkAddLics

3. Databases built with MYSQL: each database is comprised of at least 20 tables.

   - AKdb
   - ALdb
   - ARdb
   - AZdb
   - BofA
   - CAdb (listing of various data tables in the databases which are linked, updated within 24 hours of posting)

| CAcities | CAcounty | HitCountInfo | LeadAsseb | RMOInfo | WCode |
|----------|----------|--------------|-----------|---------|-------|
| addAddrss | additionallicense | | alias | banktable | |
| businessInfo | citybusInfo | compInfo | jobInfo | legalInfo | |
| legalNameType | | licenseHist | lienInfo | lienInfo1 | |
| masterWc | newcitybusInfo | newjobInfo | newownerbuilder | | |
| ownerInfo | ownerbuilder | personalAssets | prevInfo | scoretable | |
| scoretable1 | scorevalue | scorevalue1 | sherifInfo | suretycode | |

   - CAdb_old

- COdb
- CTdb
- DCdb
- DEdb
- Dedb
- FLdb
- GAdb
- HIdb
- IAdb
- IDdb
- ILdb
- INdb
- KSdb
- LAdb
- MDdb
- MIdb
- MNdb
- MSdb
- MemberDB
- NCdb
- NDdb
- NHdb
- NJdb
- NVdb
- NYdb
- National
- OHdb
- OKdb
- ORdb
- Paydb
- RIdb
- SCdb
- SiteUsersDb
- TNdb
- TXdb
- UTdb
- UserLogin
- VAdb
- Voter
- WAdb
- WIdb
- WVdb
- WYdb
- california
- mysql
- payGateway
- paydb
- test

4. Raw data Files

- ALdb  CAdb  FLdb  IAdb  INdb  MAdb    MIdb  NDdb  NVdb  OKdb  SCdb  UTdb
  ZIPcodedb  ARdb  COdb  GAdb  IDdb  LAdb  MDdb    MOdb  NEdb  NYdb  ORdb  TNdb
  WAdb      AZdb  CTdb  HSdb  ILdb  LawDb  MeganLaw  NCdb  NMdb  OHdb  PAdb
  TXdb  WYdb

5. DRAW Software
- Accts/
  o FiaMain.html

- BofA/
  o ChnOrd/  Draws/    HP.php  Header.php  JD.php
    NewTop_navi.php  PD.php    Proj/  SL.php  bofalogo.gif  legalD.php
    login2.GIF
- Calendar/
  o AddEvent.php    ValEvent.php    calendar.us  calendar2.php
  o jscalendar.php    testpopup.php    Test.php
- CalcTest.php
- Chat Board
- ChnOrd
  o CO2.php    ChangeOrder.php  ConChange.php    Calendar.us
  o Calendar2.php
- ConInfo/
  o ConInfo.php    GetLicenseInfo.php  Link.php    NestedTable.php
  o OldConInfo.php    SubConInfo.php  SubConInfo.BOA
  o SubConSetup.php  UpdateConDb.php  ValSubCon.php
- ConInv
  o DrawInv.php
- Dash/
  o ConDash.php    Dash.php    PriDash.php    ProjMenu.php
- Demo.html
- Details/
  o ProjDetail.php
- Draws
  o BorInfoFinal.php  BudgetAdjustment.php    DrawItemsSetup.php
  o DrawListSetup.php DrawListSetupFINAL.php  DrawListTemplate.php
  o DrawMASTER.php    DrawMenu.php    DrawP1.php
  o DrawP1_DOESNT_WORK        DrawP1_FINAL111406.php
  o DrawP1_v1.php  DrawP2_v2.php    ItemList.htm
  o ItemLst.php    PrintDrawList.php    ProjInfoFINAL
  o ProjInfoSetup!    ProjInfoSetup.php    ProjInfoSetup_v8.php
  o ProjInfoSetup_v9  ProjInfoSetup_v11    ShowProjInfo.php
  o SubConInfo.php    TestBorInfo.php    UpdateDrawDb.php
  o ValList.php    ValPIS.php    ValPriCon.php
  o ValProjSet.php  Calc.php    draw_setup.php
  o test.php    testInput.php
- Email/
  o BuildEmailList.php DisList.php    FormEmail.pl
  o Includes/
    - Form.php

- - Order_fns.php
    - o NestedTable.php    SetUp.php                    UpdateDb.php
    - o UpdateEmailDb.php  ValEmail.php                 Order.php
    - o Orderform.php
- EmailCk.php
- EventCal/
    - o Admin.php          Auth.php                     Calen.php
    - o Caledar.php        Checklogin.php               Colors.php
    - o Cpass.php          Head.php                     Mcolors.php
    - o Msize.php          Passwo.php                   Size.php
    - o Update.php         Values.php
- ExtraPrograms
    - o DrawMain.php       Draw_Set.php                 ValPIS.php
- Footer/
    - o Footer.html
- Forms
    - o GeneralLienRelease.php       IndemnityAgmnt.php
    - o SubLienRelease.php           ValLienRel.php
- GetCity.php
- Headers
    - o ConInfo.php        ConInfo_ConPage.php  Contact_cNav.php
    - o FloatBar.js        HPheader.php         Header.php
    - o HeaderMenu.php     LogInfo.php          MenuLine.php
    - o ProjInfo.php       ProjInfo_ConPage.php ProjInfo_temp.php
    - o ProjMenu.html      ProjMenu.php         Img14x1.jpg
- Includes/
    - o AutoComplete.js    AutoDropMenu.php     BlockMultipleSubmit.php
    - o CalcLine.php       CalcTotal.php        CalcTotal_js.php
    - o CheckSubmitNow.php CkLogin.php          CkPresist.php
    - o ConDropDownMenu.php    Cookies_js.php   CutPaste.php
    - o DisableEnter.php   DispContractorDrawMenu.php
    - o DispDrawPymtInfo.php    DisplayDrawTable.php
    - o DisplayTables.php  DrawPymtTable.php    DropDownDateMenu.php
    - o GetBondInfo.php    GetCityInfo.php      GetConName.php
    - o GetRMOInfo.php     GetSCORE.php         GetSherInfo.php
    - o GetTotalDraws.php  GetWCInfo.php        Iframe.php
    - o InsertItemDb.php   LineItem.php         Parse$.php
    - o PopUp.php          Presist.php          RequiredFields.php
    - o ST.php             StCity_drop.php      ValDate.php
    - o ValLetter.php      ValNumOnly.php       ValZip.php
    - o ValidateAddr.php   ValidateDate.php     ValidateEmail.php
    - o ValidateLSD.php    ValidateName.php     ValidateNum.php
    - o ValidateSubmitDate.php   ValidateZip.php   calendar.us
    - o calendar2.php      cookies.php          core.php
    - o isEmpty.php        js_session.js        retCookie.php
    - o session.php        setSession.php       st2.php
    - o test.php           testDate.php
- Insp/
    - o InspD1.dup         InspD1.html          InspD1.php
- JD.php
- Lien/

- o    LD.php          LienD.php              LienMain.php
- Login
  - o    CaptchasDotNet.php      ChgPass.php      LoginTest.php
  - o    ProjLogin.php            SPL.php         ValSPL.php
  - o    ValSPL_v1               ValSPL_v2       ValTest.php
  - o    ValUp.php               Check.php       forgotPass.php
  - o    forgotPassCk.php        login.php       logout.php
  - o    manage_session.php      Oldindex.php    PD.php
- Pay/
  - o    PayDraw.php             PayDrawOLD.php  PayHD.php
- Proj
  - o    ProjLogin.php           ProjMain.php    Validate_form.php
- SD.php
- SL.php
- Show_Draws.php
- Show_Projs.php
- Table.html
- captcha/
  - o    captcha.zip     capcha_config.php       captcha_image.php
  - o    captchas/
    - ▪    1942.ttf        Captcha_img.gif     Cnav_back_img.gif
    - ▪    Default_image.jpg                   Random-back-image4.jpg
  - o    captchas_doc.txt    gpl.txt         image002.jpg
  - o    test.php
- cnavlib/
  - o    FormatDate.php      ValidateDate.php    Vsession.php
  - o    Calculator.php      Cnavlib.php         testCurrency.php
  - o    validateEmail.js    validateSetup.js    validateFunctions.js
- db.php
- js/
  - o    ConMenu_var.js      Config.js       DpayMenu_var.js Mmenu_com.js
- legalD.php
- login2.GIF
- submit_ProjID/
  - o    _vti_cnf/
    - ▪    Submission_form.asp     Verify.asp
  - o    Filelist.xml    Image001.jpg    Image002.jpg    Image003.gif
- test.php
- test1.php
- usage.log
- valid.php
- legalD.php
- submit_ProjID/
- valid.php

6. Millennium Software
- Mil/
  - o    additionalstatus.php    Gp.php      js      Old_Scripts
  - o    SuspendedLicsReasons.txt            bond_codes.php
  - o    Gs_epa1.php     LD.php      parpt.php

- o   TestDetail.php        bondInfo.php   Gs_epal_query.php
- o   legalDetail.php       Personnel.php  Test.php
- o   calendar2.php         headers        legalInfo.php
- o   RMOInfo.php           testwc1.php    calendar.us
- o   histInfo1.php         legal.php      scrrpt_mod.php
- o   testwc.php            cityBiz.php    images
- o   LicAreaRpt.php        scrrpt.php     valrpt1.php
- o   compInfo.php          ind2_national.php   LicD.php
- o   SheriffInfo.php       valrpt.php     cslb.php
- o   ind2.php              LicenseDetail.php   Show_Img.php
- o   WC01.php              cslb_query.php ind2_qAddLTB.php
- o   LicHist.php           Show_Licenses.php   wcstatus.php
- o   cut.php               ind2_qt.php    lienInfo.php
- o   ShowProperty_detail.php   wrkrpt.php   Errors.php
- o   ind2_query.php        lienname.php   snumInfo.php
- o   GetLiens_old.php      i.php          logout.php
- o   socialsec.php         GetLiens.php   jobinfo.php
- o   newHP.php             SSec.php

7. Website
   - 404.htm     CNiHP.fla     Footer.htm    INV   News  Signup
   - AboutUs     codes         Gal           j02021331.jpg      news.htm
   - SO/         about_us.htm  conf.h1.gif   global.asa   j0202133.jpg
   - news.php    Specialist/   aboutus.htm   conf.h2.gif  GSolutions
   - j02160491.jpg   old_products.phpss   aboutus.php   conf.h3.gif
   - guest       j0216049.jpg  PageHeaders/  stats        Ace.htm
   - ConSearch/ Headers/       j0289337.jpg  pce.gif      Style/
   - AceLogo.gif conser.gif    HomePage/                  jobs_top_page.htm
   - PH01732K.jpg  subinterface  Alliance/              contac4.jpg
   - image002.jpg  _layouts    PH02982J.jpg             submenu1.gif
   - animate.js   contact.htm   Images/                 left_navigation.html
   - pic.htm      submenu_2.gif  arrow.gif              contact.php
   - img_14x1.gif  Links.htm    pics.htm    submenu_3.gif
   - aspnet_client  Copy.jpg   imgl4x1.jpg  Links.php   postinfo.html
   - submenu_4.gif  border.JPG  Corp/       img15x3.gif  Login/
   - privacy.htm  terms_l.gif  builders.htm  CS/        In/
   - Login.GIF    privacy.php  terms_of_use.htm          but_l.gif
   - cs.png       Inaccessible.php  Logout/             privacy-sub.gif
   - terms_of_use.php  but_2.gif   defs/              index.1.gif
   - logo.v.1.PDS  produc5.gif  testflash.html          but_3.gif
   - directory.php  index.2.gif  manasa_img.gif        Products/
   - test.html    but_4.gif    disclaimer.php          index.4.gif
   - map.php      products.htm  TOS.php                Calc/
   - dl.htm       index.bak_files  member.asp          products.php
   - Users/       Careers/     Download/              index_files/
   - member.htm   PW/          Vendors/               careers.php
   - DPay/        index.html    memberlogin.gif       refere2.gif

- _vti_inf.html
- Membernew
- Faq/
- web.config
- reference.htm
- in_img3x1.gif
- Cnavlib/
- Resources/
- in_img3x3.gif
- CNiHomePage1.swf
- msignup.gif
- Fees
- CNiHomePage3.swf
- MyCnav/
- FlashHP.swf
- CNiHomePage.fla
- SharePoint.htm

| Chatdir/ | execut1.gif | in.htm |
| refere3.gif | _vti_log | chatDir/ |
| in_imglx1.gif | Members/ | reference.gif |
| ClientLtr.php | faq.bonds.htm | in_img_3.jpg |
| WebSite/ | CN/ | faq.cnay.htm |
| miles.htm | Res/ | wpe0919.GIF |
| faq.htm | in_img3x2.gif | missing.html |
| wpe1.gif | CNi/ | faq.loans.htm |
| MOVIES/ | ScEd/ | wpe3.jpg |
| | faq.php | in_img3x4.gif |
| ScEdHeader.htm | YellowPages/ | CNiHomePage2.swf |
| in_img3x5.gif | M.wdoc.rtf | Score/ |
| | FlanCon.htm | in_img4x1.gif |
| Score.GIF/ | CNiHomePageFinal.swf | |
| in_img6x1.gif | new.asp | SharePoint_1.htm |
| Footer/ | Insurance.php | newHP.php |

8. Exception Programs

9. Exception Data Files

10. LAW Software

## SCHEDULE B

### REGISTERED INTELLECTUAL PROPERTY

1. Patent Application 09/721,728

Title: Process and Device for Conduction Electronic Transaction

Filed: Nov 25, 2000

2. Patent Application 10/623,352

Title: System and method of contractor risk assessment scoring system (CRASS) using the internet, and computer software

Filed: July 17, 2003

3. Provisional:

Title: System and method for managing Construction Contractor data elements in a database.

Filed:

4. Provisional

Title: Method and system for building a Database by collecting and parsing data stream via the Internet

Filed:

5. Provisional 60/170,829

Title: System and process of conduction transactions associated with parking tickets or parking citations using the Internet and e-commerce.

Filed: 12/12/1999

6. Provisional 60/167,938

Title: System and process of conducting transactions associated with traffic tickets or citations using the Internet and e-commerce.

Filed: 12/30/1999

7. Provisional 60/174,123

Title: System an process of conducting transactions associated with Emergency vehicles or Police Administrative Citation using the Internet and e-commerce.

Filed: 12/30/1999

PA\10513755.2

8. Provisional 60/174,124

Title: System and process of conducting transactions associated with Court Tickets, Court Warrants or Court Citations sing the Internet and E-commerce.

Filed: 12/30/1999

9. Provisional 60/199,910

Title: A system and process of conducting transactions associated with Utilities (Water and/or Garbage) using the Internet and E-Commerce.

Filed: 4/26/2000