UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAP AMERICA, INC.,

    Plaintiff,

    v.

PURPLE LEAF, LLC, et al.,

    Defendants.

_____/

No. C 11-4601 PJH

**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**

Purple Leaf LLC's motion to dismiss SAP America Inc.'s inequitable conduct affirmative defenses and counterclaims came on for hearing before this court on May 30, 2012. SAP America, Inc. appeared by its counsel Harrison Frahn, and Purple Leaf LLC appeared by its counsel Gabriel Gregg. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court GRANTS the motion as follows and for the reasons stated at the hearing.

**BACKGROUND**

On September 16, 2011, SAP America, Inc. ("SAP") filed the above-entitled action, seeking a declaratory judgment of invalidity and non-infringement of U.S. Patent No. 7,603,311 B1 ("the '311 patent"), against defendants Purple Leaf LLC (Delaware) ("Purple Leaf Delaware"), Purple Leaf LLC (Texas) ("Purple Leaf Texas"), and Rani Yadav-Ranjan ("Yadav-Ranjan"). On November 3, 2011, SAP filed a first amended complaint, adding similar claims for declaratory relief as to U.S. Patent No. 8,027,913 B1 ("the '913 patent").[1]

On February 17, 2012, Purple Leaf Delaware, Purple Leaf Texas, and Yadav-Ranjan

---

[1] The '913 patent is a continuation of the '311 patent. The two patents share a common specification, and are directed to the same technology. The '311 patent application was filed November 25, 2000, and the patent was issued October 13, 2009. The '913 patent application was filed on October 8, 2009, and the patent was issued on September 27, 2011.

filed an answer to the complaint, and Purple Leaf Delaware filed a counterclaim alleging infringement of the '311 and '913 patents. On March 9, 2012, Purple Leaf Delaware filed an amended counterclaim, alleging infringement of the same two patents.

On March 26, 2012, SAP filed an answer to the amended counterclaim, which included affirmative defenses alleging inequitable conduct, and counterclaims to Purple Leaf Delaware's counterclaims, seeking a declaratory judgment of unenforceability of the two patents, based on allegations of inequitable conduct.

On April 16, 2012, Purple Leaf Delaware filed the present motion to dismiss SAP's sixth and seventh affirmative defenses (unenforceability due to inequitable conduct) and the counterclaims alleging inequitable conduct, for failure to state a claim and for failure to allege fraud with particularity.

The allegations of inequitable conduct are, briefly, that Yadav-Ranjan, named as sole inventor on the '311 and '913 patents, assigned all her right, title, and interest in the patents to a third party (Navigator Technology, Inc.) in 2007, and then in July 2010 recorded with the U.S. Patent and Trademark Office ("PTO") a false assignment of the '311 patent and the '913 patent application (continuation application) from herself to Purple Leaf Delaware, without permission from Navigator; and that in August-September 2010, she petitioned the PTO to expunge the prior assignment document reflecting the true owner to whom she had assigned the '311 patent and '913 patent application, withdrew power of attorney from Navigator (the true owner) and granted power of attorney to herself, and changed the correspondence address on file with the PTO to her home address.[2]

**DISCUSSION**

A.   Legal Standards

    1.   Motions to dismiss for failure to state a claim

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

---

[2] According to SAP, Navigator sued Yadav-Ranjan and Purple Leaf Delaware for fraud and conversion in Santa Clara County Superior Court in July 2010, and the case settled in June 2011, with Navigator agreeing to transfer the patents-in-suit to Purple Leaf Delaware in exchange for $900,000.

alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

All allegations of material fact are taken as true. Id. at 94. However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

2. Pleading inequitable conduct

"Applicants for patents are required to prosecute patent applications in the PTO with candor, good faith, and honesty." Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995). "A breach of this duty constitutes inequitable conduct." Id. If the conduct was sufficiently culpable, a court may declare the patent to be unenforceable. Id., quoted in Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 237 n.12 (Fed. Cir. 2005).

Inequitable conduct is a broader concept than fraud, but nonetheless must be pled

3

with particularity under Rule 9(b). Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326 (Fed. Cir. 2009). Because inequitable conduct pertains to patent law, it is the law of the Federal Circuit – not the law of the regional circuit – that determines whether the party alleging inequitable conduct has done so with the particularity required under Rule 9(b). See id.

The elements of inequitable conduct are "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." Id. at 1327 n.3 (citing Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir. 2008); Molins, 48 F.3d at 1178; 37 C.F.R. § 1.56).

However, "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized bases for the allegation, does not satisfy Rule 9(b)." Id. at 1326-27. Under Federal Circuit law, the pleading must also identify the "specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Id. at 1328.

The pleading must name the individual associated with the filing or prosecution of the application, who both knew of the material information and deliberately withheld or misrepresented it; must identify "the claims and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found – i.e., the 'what' and 'where' of the material omissions[;]" and must identify "the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record[,]" in order to "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." Id. at 1329-30.

Rule 9(b) also states that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." The relevant "conditions of mind" for inequitable conduct include "knowledge of the withheld information or of the falsity of the material

4

misrepresentation, and (2) specific intent to deceive the PTO." Id. at 1327. Under Federal Circuit law, the pleadings "must allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." Id.

B.  Purple Leaf Delaware's Motion

Purple Leaf Delaware (for purposes of this motion, "Purple Leaf") argues that SAP's inequitable conduct allegations fail to state a claim, fail to state a sufficient defense, and fail to plead sufficient facts.

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense, Inc. v. Beckton, Dickinson and Co., 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). There are two key elements to a claim of inequitable conduct – intent to deceive and materiality. Id. at 1287. The materiality required to establish inequitable conduct is "but-for" materiality. Id. at 1291.

Purple Leaf contends that Therasense changed the standard for pleading inequitable conduct, and added the requirement that inequitable conduct can be found only based on an applicant's conduct before the PTO during prosecution, and then only if the conduct relates to the patentability of the claim. SAP's position is that making a false statement to the PTO is inequitable conduct, regardless of when it occurs.

The court finds that the motion must be GRANTED. Under Exergen, a party alleging inequitable conduct must identify the specific "who, what, when, where, and how" of the material misrepresentation or omission committed before the PTO, and must include sufficient allegations of underlying facts from which the court may reasonably infer that a specific individual knew of the withheld information or the falsity of the material misrepresentations, and withheld or misrepresented this information with a specific intent to deceive the PTO. See Exergen, 575 F.3d at 1327-29.

While Exergen was decided in the context of a motion for leave to amend, the Federal Circuit has also held that the pleading standard set forth in that decision should be applied to "all claims under Rule 9(b)." In re BP Lubricants USA, Inc., 637 F.3d 1307, 1311 (Fed. Cir. 2011). In other words, Exergen addresses the standards for pleading inequitable

5

1 conduct.

2 By contrast, Therasense involved an appeal of an order granting summary judgment on noninfringement and invalidity, and an appeal of a judgment following a bench trial, which included a finding that one of the patents-in-suit ("the 551 patent") was unenforceable because the patentee had failed to disclose to the PTO its briefs filed several years earlier with the European Patent Office while it was prosecuting the European counterpart to the '551 patent.

In an en-banc decision, the Federal Circuit, "[r]ecognizing the problems created by the expansion and overuse of the inequitable conduct doctrine," vacated the district court's inequitable conduct judgment, and remanded. See Therasense, 649 F.3d at 1285. The court "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." Id. at 1290. The court also reiterated that "[i]ntent and materiality are separate requirements," and emphasized that a district court may not infer intent solely from materiality, and should not use a "sliding scale" where less evidence of intent can be balanced out by more evidence of materiality. Id. (citations omitted).

With regard to proving intent, the court reviewed a number of its earlier decisions, holding that the accused infringer must prove that the patentee acted with "specific intent to deceive the PTO[;]" that the court must weigh the evidence of intent separately from the evidence of materiality; and while the court may infer intent from indirect and circumstantial evidence, "the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" Id. at 1290-91 (citations omitted).

With regard to materiality, the court announced a new rule – that "the materiality required to establish inequitable conduct is but-for materiality." Id. at 1291 (emphasis added). As an example, "in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." Id.

Thus, while Exergen addresses the standard for pleading inequitable conduct,

6

Therasense sets forth the standard for proving inequitable conduct – in particular, the elements of intent and materiality. See Exergen, 575 F.3d at 1329 n.5 (contrasting pleading with prevailing on the merits). Indeed, the Therasense opinion is replete with references to "the evidence" and to "the burden of proof" and to what is necessary to "prevail on a claim." For this reason, Purple Leaf's contention that Therasense changed the standard for pleading inequitable conduct is not entirely accurate.

Nor is it quite accurate to say that Therasense clearly established a new rule that an inequitable conduct claim must be premised on the conduct of the patent applicant during prosecution. It is true that the circumstances in Therasense were that the alleged inequitable conduct occurred during prosecution, but the court in that case was not deciding whether inequitable conduct claims must be limited to misrepresentations made during the course of patent prosecution. The key issue appears to be the type of misrepresentation or omission that can be viewed as "material," which in turn leads to the question, "material to what?"

In Therasense, the court ruled that

> [w]hen an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.

Id. However, that statement was made with reference to the specific type of inequitable conduct asserted in the case. More to the point for purposes of the present case, the Therasense court also stated as follows:

> Because inequitable conduct renders an entire patent (or even a patent family) unenforceable, as a general rule, this doctrine should only be applied in instances where the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim. . . . After all, the patentee obtains no advantage from misconduct if the patent would have issued anyway. . . . Moreover, <u>enforcement of an otherwise valid patent does not injure the public merely because of misconduct, lurking somewhere in patent prosecution, that was immaterial to the patent's issuance.</u>

Id. at 1292 (emphasis added) (citations and parentheticals omitted).

In addition to the new rule regarding the necessity of proving "but-for" materiality, the

court also announced an exception to that rule – that it is not necessary to establish "but-for" materiality where the alleged inequitable conduct can be considered "affirmative egregious misconduct." Id. Although it indicated that various types of "affirmative egregious misconduct" exist, the court provided only one specific example – the filing of "an unmistakably false affidavit." Id. at 1292-93.

While the court noted that "[a]ffidavits are inherently material," it also explained that "[a]fter all, a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent." Id. at 1292. (quotations and citations omitted). The court also added that "[b]ecause neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality." Id. at 1292-93. This explanation leads back to the conclusion that in order to be considered "material," inequitable conduct must result in "the unfair benefit of receiving an unwarranted claim." Id. at 1292.

One further question is whether Therasense has any impact on pleading inequitable conduct, in light of the pronouncements in Twombly/Iqbal that "legally conclusory statements, not supported by actual factual allegations, need not be accepted," and that a motion to dismiss should be granted if the complaint does not proffer enough facts to "state a claim for relief that is plausible on its face." One of the essential elements of a claim of inequitable conduct is that the information that was misrepresented or omitted was "material." Under Twombly/Iqbal, it is not enough to simply allege – as a legal conclusion – that the information was material – rather, there must be facts alleged supporting that element. And, following Therasense, the type of materiality that supports the claim is "but-for" materiality.

Here, with regard to materiality, SAP has not alleged facts showing "but-for" materiality, because it has not alleged that the PTO would have acted differently if Yadav-Ranjan had not made the misrepresentations she made about ownership and/or

8

assignment of the patent. There are no facts pled showing that "the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim." Id. at 1292.

Second, with regard to alleging scienter, or "specific intent to deceive the PTO," it is true that SAP alleges as a conclusion that Yadav-Ranjan intended to deceive the PTO. However, the court is more persuaded by Purple Leaf's argument that because the recording of patent ownership is a ministerial function of the PTO, and the filing of ownership documents such as notices of assignment does not affect the PTO or its processes, and the PTO does not necessarily even read such notices, and because the more plausible interpretation is that Yadav-Ranjan was seeking to mislead the public (not the PTO) about the ownership of the patents, SAP's answer and counterclaim cannot be said to have adequately alleged intent to deceive the PTO.

The dismissal is with leave to amend. As stated at the hearing, SAP America Inc. shall file its amended pleading no later than June 20, 2012. Any amended pleading must allege additional facts in support of the claims/defenses, which must be facts other than those previously alleged regarding the filing of ownership documents with the PTO.

**IT IS SO ORDERED.**

Dated: June 15, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

9